STATE of Wisconsin, Plaintiff-Respondent,

v.

Rickey R. DENSON,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2009AP694–CR. Oral argument April 14, 2011.
—Decided July 13, 2011.*

2011 WI 70

(Also reported in 799 N.W.2d 831.)

685

ABRAHAMSON, C. J. concurs.
BRADLEY, J. joins.

For the appellant-petitioner there were briefs by *Donna Odrzywolski,* Wauwatosa, and oral argument by *Donna Odrzywolski.*

For the plaintiff-respondent there was a brief by *Maura F.J. Whelen,* assistant attorney general with whom on the brief was *J.B. Van Hollen,* attorney general, and oral argument by *Maura F.J. Whelen.*

¶ 1. ANNETTE KINGSLAND ZIEGLER, J. This is a review of an unpublished order of the court of appeals, *State v. Denson,* No. 2009AP694–CR, unpublished order (Wis. Ct. App. Oct. 5, 2010), that summarily affirmed an order by the Rock County Circuit Court[1] denying the defendant's postconviction motion for acquittal or, alternatively, a new trial.

¶ 2. After a trial in which the defendant, Rickey R. Denson (Denson), testified in his own defense, a jury found Denson guilty of first-degree recklessly endangering safety in violation of Wis. Stat. § 941.30(1) (2001–02),[2] as a lesser included offense of attempted first-degree intentional homicide; and false imprison-

---

[1] The Honorable Michael R. Fitzpatrick presided.

[2] All subsequent references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

Wisconsin Stat. § 941.30, "Recklessly endangering safety," provides, in relevant part: "(1) First-degree recklessly endangering safety. Whoever recklessly endangers another's safety under circumstances which show utter disregard for human life is guilty of a Class F felony."

686

ment in violation of Wis. Stat. § 940.30.[3] The jury acquitted Denson of the remaining two charges of first-degree sexual assault of a child contrary to Wis. Stat. § 948.02(1)[4] and negligent handling of a dangerous weapon contrary to Wis. Stat. § 941.20(1)(a).[5] The circuit court entered judgment on the jury verdict.[6]

¶ 3. Denson moved the circuit court for a judgment acquitting him of the first two charges or, alternatively, an order granting him a new trial on the grounds that the circuit court failed to engage him in an on-the-record colloquy regarding his right not to testify. Relying on this court's decision in *State v. Weed,* 2003 WI 85, 263 Wis. 2d 434, 666 N.W.2d 485, Denson argued that a criminal defendant's constitutional right not to testify is a fundamental right that can be waived only by the defendant personally with an on-the-record colloquy.

¶ 4. The circuit court held an evidentiary hearing at which both Denson and his trial counsel testified. The circuit court then denied Denson's postconviction

[3] Wisconsin Stat. § 940.30, "False imprisonment," provides: "Whoever intentionally confines or restrains another without the person's consent and with knowledge that he or she has no lawful authority to do so is guilty of a Class H felony."

[4] Wisconsin Stat. § 948.02, "Sexual assault of a child," provides, in relevant part: "(1) First degree sexual assault. Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 13 years is guilty of a Class B felony."

[5] Wisconsin Stat. § 941.20, "Endangering safety by use of dangerous weapon," states, in relevant part: "(1) Whoever does any of the following is guilty of a Class A misdemeanor: (a) Endangers another's safety by the negligent operation or handling of a dangerous weapon . . . ."

[6] The Honorable Michael J. Byron presided.

motion, concluding that Denson knowingly, voluntarily, and intelligently waived his right not to testify.

¶ 5. Denson appealed, and the court of appeals summarily affirmed.

¶ 6. We granted Denson's petition for review and now affirm.

¶ 7. This case presents the following issues for our review:

(1) Is a criminal defendant's constitutional right not to testify a fundamental right that can be waived only by the defendant personally with an on-the-record colloquy?

(2) Once a defendant properly raises in a postconviction motion the issue of an invalid waiver of the right not to testify, what is an appropriate remedy to ensure that the defendant knowingly, voluntarily, and intelligently waived his or her right not to testify?

(3) Did Denson knowingly, voluntarily, and intelligently waive his right not to testify?

¶ 8. A criminal defendant's constitutional right not to testify is a fundamental right that must be waived knowingly, voluntarily, and intelligently. However, we conclude that circuit courts are not required to conduct an on-the-record colloquy to determine whether a defendant is knowingly, voluntarily, and intelligently waiving his or her right not to testify. While we recommend such a colloquy as the better practice, we decline to extend the mandate pronounced in *Weed*. In any case, once a defendant properly raises in a postconviction motion the issue of an invalid waiver of the right not to testify, an evidentiary hearing is an

688

appropriate remedy to ensure that the defendant know-
ingly, voluntarily, and intelligently waived his or her
right not to testify.

¶ 9. In this case, the circuit court conducted
an evidentiary hearing and properly concluded that
Denson knowingly, voluntarily, and intelligently waived
his right not to testify.

## I. FACTUAL BACKGROUND

¶ 10. We derive these facts from the testimony
presented at trial. To the extent that the facts are
disputed, we so indicate.

¶ 11. Up until August 2002, Denson had a six-
year on again, off again romantic relationship with
Talisa Tichenor (Tichenor). For the last year of their
relationship, the couple resided together in a house in
Beloit, Wisconsin.

¶ 12. On August 6, 2002, at around 6:00 p.m.,
Tichenor returned home from work. As the store man-
ager of Arby's restaurant in Janesville, it was
Tichenor's responsibility to bring the restaurant's daily
deposit to the bank. That evening, Tichenor did not
bring the deposit to the bank and instead drove directly
home to bring dinner to her 11–year-old daughter,
A.K.T. A.K.T. and Tichenor's son then spent the night at
their respective friends' houses.

¶ 13. After dinner, Denson and Tichenor started
arguing over the couple's finances. According to Den-
son, the argument began because he was angry at
Tichenor for paying for dinner with money out of the
Arby's deposit. Tichenor, on the other hand, testified
that Denson was angry because Tichenor refused to
look for her car title. They continued to argue until they
eventually fell asleep on the futon in the living room.

689

¶ 14. Denson and Tichenor awoke around 4:00 a.m. and resumed their argument. At this point, their testimony significantly diverges. For purposes of describing the remaining facts, we first recount Tichenor's testimony, followed by Denson's.

¶ 15. According to Tichenor, the argument intensified when Denson threatened to break off the relationship but said that he could not leave because Tichenor "was going to call the police on him anyway." Specifically, Denson expressed that he was afraid to leave Tichenor "because of what he's done to [Tichenor's] daughter," A.K.T. Denson then informed Tichenor that he had pulled A.K.T.'s pants down, performed oral sex on her, and fondled her breasts. Denson's account evoked an earlier report given by A.K.T. to Tichenor. Tichenor then told Denson that "it didn't matter, whatever he did, he just needed to go, he needed to get out."

¶ 16. At that point, Tichenor testified, Denson came towards her, and she felt a sharp pain on the left side of her neck. When she reached up to her neck, she "felt something liquidy" and realized she was bleeding. Denson proceeded to push Tichenor back onto the futon and smother her face with a pillow. Tichenor managed to turn herself around and bite down on Denson's left pinkie finger until he let her go.

¶ 17. Tichenor then recounted how she, feeling lightheaded, went to the kitchen sink to splash cold water on her face. While bent over the sink, she felt what she thought was a frying pan hit the back of her head. Eventually, Tichenor noticed a newly broken chair in the kitchen and figured that to be the object she was hit with.

¶ 18. Tichenor described how she thought she was going to die and had begged Denson to leave her

690

alone. She told him that she would not call the police; she just needed help. Denson, however, instructed her to go down into the basement. When Tichenor refused, Denson picked her up and carried her over to the basement stairs, eventually shoving her down. Tichenor fell down the stairs and struck a brick wall at the bottom. When asked how hard she landed against the brick wall, she responded, "Hard enough that it split my nose open."

¶ 19. Tichenor attempted to climb back up the stairs. When she neared the top, Denson told her "that [she] needed to get back down the steps or he was going to kill [her]." Tichenor obliged, and Denson left for a few minutes.

¶ 20. When Denson returned, he instructed Tichenor to stand up against a post that was supporting the stairs. Tichenor again obliged, and Denson began tying her to the post with phone wire, cords, and torn sheets. After stuffing her mouth with a towel, Denson kissed Tichenor on the cheek and told her he loved her.

¶ 21. Denson went back upstairs and eventually drove off in Tichenor's car.

¶ 22. Tichenor managed to untie herself and get back upstairs. While unclear on how long she had been tied up, Tichenor testified that by the time she made it upstairs, a clock indicated it was almost 10:00 a.m. Tichenor went outside and screamed for help. A neighbor called 911, and shortly thereafter, police officers arrived.

¶ 23. It is undisputed that Tichenor suffered from stab wounds on her neck and shoulder, a laceration on her nose, and multiple bruises across her body. It is further undisputed that Denson tied her up to the post in the basement. However, Denson disputes the events that led up to Tichenor being tied up.

691

¶ 24. According to Denson, his argument with Tichenor at 4:00 a.m. on August 7, 2002, centered on Denson informing Tichenor that he had fathered a child with another woman. When Denson told Tichenor that he planned to support the baby, Tichenor responded by threatening to have Denson put in jail for molesting A.K.T.

¶ 25. Denson testified that their argument turned physical. When he approached Tichenor, she "pulled her arm back . . . and [Denson] seen [sic] something in there, but [] didn't know exactly what it was, and [he] grabbed it." When he grabbed the object, he cut his pinkie finger. According to Denson, they wrestled with the object until Tichenor fell backwards onto the futon. Denson "felt something wet on [him]" and realized that Tichenor had been cut.

¶ 26. Denson indicated that Tichenor then went into the kitchen and on her way, fell over an already broken chair. She threatened Denson that "if you leave me, I'm going to say you did all this." Denson told Tichenor she should go to the hospital, but Tichenor refused, stating, "[D]on't worry about it. It's only a scratch."

¶ 27. Tichenor continued her threats to blame Denson. By his own admission, he then brought her down to the basement and tied her up. When asked on direct examination why he brought Tichenor down to the basement, he responded, "Because she had told me that because I had a criminal record, they ain't going to believe me. They going to believe her, and I panic." Denson denied gagging Tichenor and reported instead that he gave her a towel to help stop the bleeding.

¶ 28. Denson conceded that he then drove away in Tichenor's car. Before leaving, however, he told Tichenor that "as soon as [he] leave[s] town, [he] was just going to call someone to come and get her."

¶ 29. On direct examination, Denson testified that he had no intention of killing Tichenor:

Q: [Attorney Howard, counsel for Denson]: Did you at any point during this incident tell Talisa Tichenor you intended to kill her?

A: [Denson]: No, I didn't.

Q: Were you intending to?

A: No, she—no, she—she attacked me.

## II. PROCEDURAL POSTURE

¶ 30. On August 8, 2002, the State charged Denson with attempted first-degree intentional homicide, false imprisonment, first-degree sexual assault of a child, and negligent handling of a dangerous weapon.

¶ 31. Denson pled not guilty, and the case proceeded to a jury trial on October 26 through October 29, 2004. The over two-year delay was due largely to the fact that Denson went through five attorneys. Relevant to the issue before us today, Denson, through two of his attorneys, including his trial counsel, twice filed motions to sever and conduct a separate trial on the count of first-degree sexual assault of a child. Denson argued that joinder of the sexual assault count with the other three counts would unduly prejudice him because, *inter alia,* "if he chooses to testify, [Denson] will have to testify to two unrelated sets of facts that are separated in time by a matter of months." The circuit court denied both motions.

¶ 32. Denson was represented at trial by Attorney Robert C. Howard, III (Attorney Howard). Initially, Denson asked not to be represented by Attorney Howard, and Attorney Howard was appointed only as

693

standby counsel. Denson subsequently filed several pro se motions, including at least three motions for dismissal, a motion for bond reduction, and a demand for a speedy trial. Thereafter, Denson changed his mind and opted to have Attorney Howard represent him at trial.

¶ 33. At trial, the State's key witnesses were Tichenor and her daughter, A.K.T. Denson testified in his own defense. The circuit court did not engage Denson in a colloquy regarding his right not to testify. In his defense, Denson denied sexually assaulting A.K.T. and maintained that Tichenor was stabbed only after she attacked him.

¶ 34. The jury found Denson guilty of first-degree recklessly endangering safety, as a lesser included offense of attempted first-degree intentional homicide, and false imprisonment. The jury acquitted Denson of the remaining two charges of first-degree sexual assault of a child and negligent handling of a dangerous weapon.

¶ 35. The circuit court entered judgment on the jury verdict. On the count of first-degree recklessly endangering safety, the circuit court sentenced Denson to ten years imprisonment, comprised of five years in initial confinement and five years extended supervision. On the count of false imprisonment, the circuit court sentenced Denson to five years imprisonment, concurrent with the first count.

¶ 36. On December 4, 2008,[7] Denson filed a post-conviction motion, requesting the circuit court to enter

---

[7] On August 1, 2006, Denson's then appellate counsel filed a No-Merit Notice of Appeal. The court of appeals conducted an independent review of the record, *see Anders v. California*, 386 U.S. 738, 744 (1967), and identified a potential issue concerning whether Denson properly waived his right not to testify. *See State v. Denson*, No. 2006AP1864–CRNM, unpublished order (Wis. Ct. App. July 17, 2008). Thereafter, Denson's current appellate

694

a judgment of acquittal or, alternatively, grant him a new trial on the grounds that the circuit court failed to engage him in an on-the-record colloquy regarding his right not to testify. Relying on this court's decision in *Weed,* 263 Wis. 2d 434, Denson argued that a criminal defendant's constitutional right not to testify is a fundamental right that can be waived only by the defendant personally with an on-the-record colloquy. The circuit court's failure to engage Denson in such a colloquy, he argued, violated his right to due process of law and privilege against self-incrimination guaranteed by the United States Constitution and the Wisconsin Constitution.

¶ 37. Guided by the court of appeals' decision in *State v. Jaramillo,* 2009 WI App 39, 316 Wis. 2d 538, 765 N.W.2d 855, the circuit court concluded that it was not required to engage Denson in an on-the-record colloquy regarding his right not to testify. Since Denson raised the issue, however, the circuit court determined that it was obligated to conduct an evidentiary hearing to determine whether Denson knowingly, voluntarily, and intelligently waived his right not to testify.

¶ 38. Both Denson and Attorney Howard testified at the evidentiary hearing. When asked whether he "chose to testify," Denson answered, "Yes." Denson acknowledged that he had discussions with Attorney Howard regarding his decision to testify. However, Denson maintained that Attorney Howard never in-

counsel informed the court of appeals that she believes the issue raised by the court has arguable merit and wishes to pursue it. Accordingly, the court of appeals dismissed the no-merit appeal and extended the time for Denson to file a postconviction motion. *State v. Denson,* No. 2006AP1864–CRNM, unpublished order (Wis. Ct. App. November 3, 2008).

formed him of his right not to testify, never told him that the jury would be instructed not to use his silence against him, and never advised him that the decision was his alone. Rather, according to Denson, their discussions focused on the idea that Denson "had to testify because [he] had no witnesses with [him]."

¶ 39. On cross-examination, Denson agreed that his defense at trial was that he did not sexually assault A.K.T. and did not intentionally stab Tichenor. When asked how he thought he would defend the case without testifying, Denson responded, "I have no idea." Finally, Denson denied that Attorney Howard was ever appointed standby counsel.

¶ 40. Attorney Howard, on the other hand, testified that he met with Denson personally at least six times and that they discussed at length Denson's right to testify and right not to testify. According to Attorney Howard, Denson "strongly urged" him to present a self-defense case. Given the fact that only Tichenor and Denson had knowledge of what happened, Attorney Howard counseled Denson to testify but still made clear that the choice was Denson's.

¶ 41. In addition, Attorney Howard stated that he specifically discussed with Denson the advantages and disadvantages of testifying:

Q [Attorney Donna Odrzywolski, counsel for Denson]: . . . Did you tell [Denson] that his testimony could be used against him to convict him of, say, for example, false imprisonment?

A [Attorney Howard]: Yes. And, in fact, I told him that if he took the stand, the disadvantages of taking the stand in terms of making a decision would be that he would be subject to cross-examination from [the Assistant District Attorney] and that he would be

asked, and I talked to him and I discussed with him at some length about thing, [sic] admissions that he would have to make with regard to number of criminal convictions and things like that that would not, that would be used against him and would be something that would be brought out in front of the jury. So yes, I did discuss that.

Q Okay. Ultimately, did you, did you discuss with Mr. Denson the fact that only he could make that decision?

A Yes.

¶ 42. At the close of the evidentiary hearing, the circuit court concluded that the State met its burden of proving by clear and convincing evidence that Denson knowingly, voluntarily, and intelligently waived his right not to testify. In particular, the circuit court found that Denson knew he had the right not to testify, knew of the consequences of testifying, and knew that he could exercise his right not to testify even if Attorney Howard recommended otherwise. The circuit court based those findings on a determination that Attorney Howard's testimony was more credible than Denson's. Specifically, the circuit court noted that Denson's claim of being unaware of his right not to testify was inconsistent with his aggressive demeanor and involvement throughout the case: "The record in this case shows that Mr. Denson, whatever other shortcomings he might have, is not shy about stating his opinions about things, including in court and to professionals." Moreover, the circuit court found that Denson was untruthful regarding Attorney Howard's initial role as standby counsel. In comparison, the circuit court found Attorney Howard's testimony to be believable and consistent with the record.

¶ 43. The circuit court therefore denied Denson's postconviction motion.

¶ 44. Denson appealed, and the court of appeals summarily affirmed. *Denson,* No. 2009AP694–CR, unpublished order (Wis. Ct. App. Oct. 5, 2010). Citing *Jaramillo,* 316 Wis. 2d 538, ¶¶ 16–18, the court of appeals observed that a circuit court is not required to engage a criminal defendant in an on-the-record colloquy to ensure that he or she is knowingly, voluntarily, and intelligently waiving the right not to testify. *Denson,* No. 2009AP694–CR, unpublished order, at 2. "To the extent Denson nevertheless urge[d] that the right not to testify *should* require an on-the-record colloquy to ensure its waiver is intentional," the court of appeals concluded that only the Wisconsin Supreme Court possesses the supervisory authority necessary to promulgate rules of criminal practice and procedure. *Id.* at 2–3.

¶ 45. In addition, the court of appeals rejected Denson's argument that the postconviction evidentiary hearing was an inadequate remedy for determining whether Denson knowingly, voluntarily, and intelligently waived his right not to testify:

> Citing *State v. Weed,* 2003 WI 85, 263 Wis. 2d 434, 666 N.W.2d 485, Denson emphasizes our supreme court's acknowledgement that a postconviction motion [sic] may not always be a sufficient remedy for the waiver of a fundamental right. *Id.,* ¶ 47. Inherent in this acknowledgement, however, is recognition that a subsequent hearing is sometimes an adequate remedy. In the present case, there is nothing to suggest that the postconviction evidentiary hearing was not an adequate remedy.

*Denson,* No. 2009AP694–CR, unpublished order, at 3.

¶ 46. Denson petitioned this court for review, which we granted on December 8, 2010. We now affirm.

## III. STANDARD OF REVIEW

¶ 47. In this case, we must determine whether a criminal defendant's constitutional right not to testify is a fundamental right that can be waived only by the defendant personally with an on-the-record colloquy. That question requires us to apply constitutional principles and is therefore one that we review independently. *See Weed,* 263 Wis. 2d 434, ¶ 12; *State v. Huebner,* 2000 WI 59, ¶ 16, 235 Wis. 2d 486, 611 N.W.2d 727.

¶ 48. In addition, whether Denson knowingly, voluntarily, and intelligently waived his right not to testify presents a question of constitutional fact; that is, a question the determination of which is decisive of constitutional rights. *See Weed,* 263 Wis. 2d 434, ¶ 13; *State v. Garcia,* 2010 WI App 26, ¶ 5, 323 Wis. 2d 531, 779 N.W.2d 718. A question of constitutional fact presents a mixed question of fact and law and is reviewed using a two-step process. *See State v. Robinson,* 2010 WI 80, ¶ 22, 327 Wis. 2d 302, 786 N.W.2d 463; *Weed,* 263 Wis. 2d 434, ¶ 13; *Garcia,* 323 Wis. 2d 531, ¶ 5; *State v. Arredondo,* 2004 WI App 7, ¶ 12, 269 Wis. 2d 369, 674 N.W.2d 647. "First, we review the circuit court's findings of historical fact under a deferential standard, upholding them unless they are clearly erroneous." *Robinson,* 327 Wis. 2d 302, ¶ 22; *see also Weed,* 263 Wis. 2d 434, ¶ 13. "Second, we independently apply constitutional principles to those facts." *Robinson,* 327 Wis. 2d 302, ¶ 22.

## IV. ANALYSIS

A. A criminal defendant's constitutional right not to testify is a fundamental right that must be waived knowingly, voluntarily, and intelligently.

¶ 49. "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so." *Harris v. New York*, 401 U.S. 222, 225 (1971). A criminal defendant's corollary rights to testify and not to testify are guaranteed by both the United States Constitution and the Wisconsin Constitution.

¶ 50. In *Rock v. Arkansas*, 483 U.S. 44, 53 n.10 (1987), the United States Supreme Court made explicit that a criminal defendant's right to testify on his or her own behalf is a fundamental constitutional right. The right is rooted in several provisions of the federal constitution, including the Fourteenth Amendment's guarantee of due process of law,[8] *id.* at 51, and the Sixth Amendment's right to "compulsory process for obtaining witnesses in [the defendant's] favor,"[9] *id.* at 52. As the Supreme Court explained, logically included in a

---

[8] Section 1 of the Fourteenth Amendment provides, in relevant part, that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

[9] The Sixth Amendment grants a criminal defendant the right, *inter alia,* "to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI.

The Sixth Amendment is made applicable to the States through the Fourteenth Amendment. *Rock v. Arkansas*, 483 U.S. 44, 52 (1987) (citing *Washington v. Texas*, 388 U.S. 14, 17–19 (1967)); *see also State v. Imani*, 2010 WI 66, ¶ 20 n.8, 326 Wis. 2d 179, 786 N.W.2d 40.

criminal defendant's right to be heard and right to call witnesses is a right to present one's own testimony. *See id.* at 51–52.

¶ 51. Likewise, Article I, Section 7 of the Wisconsin Constitution expressly guarantees criminal defendants "the right to be heard by himself" and the right "to have compulsory process to compel the attendance of witnesses in his behalf." Consistent with the Supreme Court's pronouncement in *Rock,* this court has "affirm[ed] that a criminal defendant's constitutional right to testify on his or her behalf is a fundamental right." *Weed,* 263 Wis. 2d 434, ¶ 39.

¶ 52. In addition, the Supreme Court has recognized that a criminal defendant's right to testify is "a necessary corollary to the Fifth Amendment's guarantee against compelled testimony." *Rock,* 483 U.S. at 52. The Fifth Amendment protects against self-incrimination, providing that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.[10] The Supreme Court has described the relationship between the right to testify and the right not to testify as follows: "The Fifth Amendment's privilege against self-incrimination is fulfilled only when an accused is guaranteed the right to remain silent unless he chooses to speak in the unfettered exercise of his own will. The choice of whether to testify in one's own defense is an exercise of the constitutional privilege." *Rock,* 483 U.S. at 53 (internal quotations omitted).

¶ 53. A criminal defendant's right not to testify is regarded as so significant that the Fifth Amendment

_____

[10] The Fifth Amendment's privilege against self-incrimination is made applicable to the States through the Fourteenth Amendment. *Malloy v. Hogan,* 378 U.S. 1, 8 (1964).

"further guarantees that no adverse inferences are to be drawn from the exercise of that privilege," *Carter v. Kentucky,* 450 U.S. 288, 305 (1981), and "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt," *Griffin v. California,* 380 U.S. 609, 615 (1965).

¶ 54. Article I, Section 8 of the Wisconsin Constitution is the state counterpart to the Fifth Amendment and provides, in relevant part, that no person "may be compelled in any criminal case to be a witness against himself or herself." *See also State v. Jennings,* 2002 WI 44, ¶ 40 & n.8, 252 Wis. 2d 228, 647 N.W.2d 142.

█

¶ 55. In *Jaramillo,* the court of appeals reasoned that because the right to testify is a fundamental right, it follows that "the constitutionally articulated corollary to the right to testify—the right *not* to testify—is fundamental as well." 316 Wis. 2d 538, ¶ 10 (citing *Rock,* 483 U.S. at 51–53; *Weed,* 263 Wis. 2d 434, ¶ 39). We agree. Accordingly, a criminal defendant's constitutional right not to testify is a fundamental right.

██

¶ 56. Because the right not to testify is a fundamental right, we must " 'indulge every reasonable presumption against [its] waiver.' " *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938) (quoting *Aetna Ins. Co. v. Kennedy,* 301 U.S. 389, 393 (1937)); *see also Hodges v. Easton,* 106 U.S. 408, 412 (1882). A waiver of a fundamental right is "ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Johnson,* 304 U.S. at 464; *see also State v. Bangert,* 131 Wis. 2d 246, 265, 389 N.W.2d 12 (1986). Accordingly, a criminal defendant must knowingly, voluntarily, and intelligently waive his or her right not to testify.

¶ 57. In the case now before us, Denson argues that the right not to testify can be waived only by the defendant personally with an on-the-record colloquy. Denson's argument is premised upon our decision in *Weed,* in which we held that "the constitutional right of a criminal defendant to testify on his or her own behalf is a fundamental right; therefore, waiver of the right to testify requires that a circuit court conduct an on-the-record colloquy." 263 Wis. 2d 434, ¶ 48. According to Denson, it is only logical that we extend the holding in *Weed* to include the corollary right not to testify.

¶ 58. We do not view the analysis so simply. While we recommend an on-the-record colloquy as the better practice, we decline to extend *Weed* to include the right not to testify.

B. Circuit courts are not required to conduct an on-the-record colloquy to determine whether a defendant is knowingly, voluntarily, and intelligently waiving his or her right not to testify.

¶ 59. In *Weed,* this court imposed upon circuit courts an affirmative duty to conduct an on-the-record colloquy to ensure that a criminal defendant is knowingly, voluntarily, and intelligently waiving his or her right to testify. 263 Wis. 2d 434, ¶ 40. In that case, after a trial in which the defendant did not testify, a jury found her guilty of first-degree intentional homicide. *Id.*, ¶¶ 5–6. At trial, the circuit court did not conduct a colloquy with the defendant to ensure that she was knowingly, voluntarily, and intelligently waiving her right to testify. *Id.*, ¶ 6. The defendant filed a postconviction motion for a new trial, arguing, *inter alia,* that she did not validly waive her right to testify on her own behalf. *Id.*, ¶ 7. The circuit court held an evidentiary

hearing at which both the defendant and her trial counsel testified. *Id.* Based upon " 'the post-trial testimony of defendant's counsel, other choices made by the defendant during trial, and the court's interaction with the defendant during the course of the trial,' " the circuit court concluded that the defendant knowingly, voluntarily, and intelligently waived her right to testify. *Id.* The court of appeals affirmed. *Id.*, ¶ 8.

¶ 60. Upon review, this court affirmed, though on different grounds. We concluded that a criminal defendant's right to testify is a fundamental right and that circuit courts are required to conduct an on-the-record colloquy to ensure that the defendant is knowingly, voluntarily, and intelligently waiving his or her right to testify. *Id.*, ¶ 40. We arrived at our conclusion by considering other cases in which we have held that a circuit court must conduct a colloquy with the defendant, including when a defendant waives his or her right to counsel, *see State v. Klessig,* 211 Wis. 2d 194, 564 N.W.2d 716 (1997), and when a defendant waives his or her right to a jury trial, *see State v. Anderson,* 2002 WI 7, 249 Wis. 2d 586, 638 N.W.2d 301. *Weed,* 263 Wis. 2d 434, ¶ 39. We explained that the decision to waive such rights is "so fundamental to the concept of fair and impartial decision making, that their relinquishment must meet the standard set forth in *Johnson v. Zerbst,* 304 U.S. 458 (1938). That is, the waiver must be an intentional relinquishment or abandonment of a known right or privilege." *Weed,* 263 Wis. 2d 434, ¶ 40 (internal quotations omitted). We determined that "[t]his same rationale applies to the fundamental right of a criminal defendant to testify on his or her behalf." *Id.*

¶ 61. Accordingly, we held that in order to ensure that a defendant is knowingly, voluntarily, and intelli-

gently waiving his or her right to testify, circuit courts should conduct an on-the-record colloquy with the defendant, outside the jury's presence, and inquire whether the defendant (1) is aware of his or her right to testify and (2) has discussed this right with his or her counsel. *Id.*, ¶ 43.

¶ 62. In *Weed,* notwithstanding the fact that the circuit court did not conduct a colloquy with the defendant, we concluded that the defendant knowingly, voluntarily, and intelligently waived her right to testify based upon our review of the record and the evidence presented at the postconviction evidentiary hearing. *Id.*, ¶ 44. Still, we reserved for another day the issue of whether a postconviction evidentiary hearing would always be sufficient to ensure that a criminal defendant validly waived his or her right to testify. *Id.,* ¶ 47 ("Since Weed was provided an adequate remedy from the postconviction hearing and the parties did not fully brief the issue of remedy, we do not decide the appropriate remedy if a circuit court fails to conduct an on-the-record colloquy with a criminal defendant to ensure that the defendant is waiving his or her right to testify.").

¶ 63. Turning to the central issue before us today, we decline to extend *Weed* to include the corollary to the right to testify—the right *not* to testify. That is, we conclude that circuit courts are not required to conduct an on-the-record colloquy to determine whether a defendant is knowingly, voluntarily, and intelligently waiving his or her right *not* to testify.

¶ 64. As the *Weed* court recognized, we are in the small minority of jurisdictions that impose an affirmative duty upon circuit courts to conduct an on-the-record colloquy to ensure that a criminal defendant is knowingly, intelligently, and voluntarily waiving his or her

705

right to testify.[11] 263 Wis. 2d 434, ¶ 41. The vast majority of jurisdictions do not impose such a duty upon circuit courts,[12] and in fact, many jurisdictions advise against it. *See, e.g., United States v. Webber,* 208 F.3d 545, 552 (6th Cir. 2000); *United States v. Martinez,* 883 F.2d 750, 760 (9th Cir. 1989); *Illinois v. Shelton,* 624 N.E.2d 1205, 1211 (Ill. App. Ct. 1993); *Taylor v. Kansas,* 843 P.2d 682, 688 (Kan. 1992); *Massachusetts v. Waters,* 506 N.E.2d 859, 865 (Mass. 1987). Their reasons for not mandating an on-the-record colloquy are many. *See Martinez,* 883 F.2d at 760. The most notable include that by advising the defendant of his or her right to testify, the circuit court might inadvertently influence the defendant to waive his or her right *not* to testify,

---

[11] Other jurisdictions that mandate a *Weed*-type colloquy include Alaska, *see Mute v. Alaska,* 954 P.2d 1384, 1386–87 (Alaska Ct. App. 1998); Colorado, *see Colorado v. Curtis,* 681 P.2d 504, 514–15 (Colo. 1984); Hawaii, *see Tachibana v. Hawai'i,* 900 P.2d 1293, 1303 (Haw. 1995); South Carolina, *see South Carolina v. Davis,* 422 S.E.2d 133, 145 (S.C. 1992), *overruled on other grounds by Brightman v. South Carolina,* 520 S.E.2d 614, 616 n.5 (S.C. 1999); Tennessee, *see Momon v. Tennessee,* 18 S.W.3d 152, 162 (Tenn. 1999), *reh'g granted,* 18 S.W.3d 152, 175 (Tenn. 2000) (concluding that a criminal defendant may waive the right to testify by signing a written waiver or by engaging in the voir dire procedure set out in the initial decision); and West Virginia, *see West Virginia v. Neuman,* 371 S.E.2d 77, 81–82 (W. Va. 1988).

[12] For a comprehensive list of jurisdictions that do not require circuit courts to conduct an on-the-record colloquy to ensure that a criminal defendant is knowingly, intelligently, and voluntarily waiving his or her right to testify, see *Johnson v. Texas,* 169 S.W.3d 223, 232 n.50 (Tex. Crim. App. 2005). *See also* Michele C. Kaminski, Annotation, *Requirement that Court Advise Accused of, and Make Inquiry with Respect to, Waiver of Right to Testify,* 72 A.L.R.5th 403 (1999).

might improperly intrude upon the attorney-client relationship or interfere with defense strategy, or might lead the defendant into believing that his or her defense counsel is somehow deficient. *See Webber*, 208 F.3d at 551–52; *United States v. Ortiz*, 82 F.3d 1066, 1069–70 (D.C. Cir. 1996); *Martinez*, 883 F.2d at 760.

¶ 65. We believe that these risks apply with even greater force to a circuit court's inquiry into a criminal defendant's decision to testify. Defense counsel has the primary responsibility for advising the defendant of his or her corollary rights to testify and not to testify and for explaining the tactical implications of both. "[V]iewed objectively, the defendant's testimony may increase the likelihood of conviction." *Colorado v. Mozee*, 723 P.2d 117, 125 (Colo. 1986). In that sense, we believe it "unlikely that a competent defense counsel would allow a defendant to take the stand without a full explanation of the right to remain silent and the possible consequences of waiving that right." *Id.* Once a defendant, counseled by his or her attorney, makes the decision to testify, a circuit court's inquiry into whether the defendant is aware of his or her corollary right not to testify runs a real risk of interfering with defense strategy and inadvertently suggesting to the defendant that the court disapproves of his or her decision to testify. For well over a century, the Supreme Court has made clear that circuit courts ought not to comment on a criminal defendant's decision to testify, lest the value of the right be diminished:

> [I]t must be remembered that men may testify truthfully, although their lives hang in the balance, and that the law, in its wisdom, has provided that the accused shall have the right to testify in his own behalf. Such a privilege would be a vain one if the judge . . . should

707

intimate that the dreadful condition in which the accused finds himself should deprive his testimony of probability.

*Allison v. United States,* 160 U.S. 203, 207 (1895). We believe that same principle holds true today.

¶ 66. Therefore, different from our conclusion in *Weed, see* 263 Wis. 2d 434, ¶¶ 41–42, we conclude that the risk that a circuit court's inquiry into a criminal defendant's decision to testify will influence the defendant to waive his or her right to testify or will improperly interfere with defense strategy outweighs the benefit of mandating an on-the-record colloquy to ensure that the defendant is knowingly, voluntarily, and intelligently waiving his or her right not to testify.

¶ 67. At the same time, as a practical matter, we recognize that conducting an on-the-record colloquy "is the clearest and most efficient means" of ensuring that the defendant has validly waived his or her right not to testify "and of preserving and documenting that valid waiver for purposes of appeal and postconviction motions." *See Klessig,* 211 Wis. 2d at 206; *see also Anderson,* 249 Wis. 2d 586, ¶ 23. Here, for instance, we are mindful of the fact that had the circuit court engaged Denson in an on-the-record colloquy regarding his right not to testify, this case likely would not be before us. Accordingly, we recommend an on-the-record colloquy as the better practice. In fact, the Special Materials prepared by the Wisconsin Criminal Jury Instructions Committee already direct circuit courts to inquire into a criminal defendant's understanding of both the right to testify and the right not to testify. *See* Wis JI—Criminal SM-28.

C. A postconviction evidentiary hearing is an appro-
 priate remedy to ensure that a defendant know-
 ingly, voluntarily, and intelligently waived his or
 her right not to testify.

¶ 68. In any case, whether or not the circuit court
conducts an on-the-record colloquy, it remains that a
criminal defendant must knowingly, voluntarily, and
intelligently waive his or her right not to testify. It
follows that a defendant may raise in a postconviction
motion the issue of an invalid waiver of the right not to
testify. Once a defendant properly raises the issue, we
determine that a postconviction evidentiary hearing is
an appropriate remedy to ensure that a defendant
knowingly, voluntarily, and intelligently waived his or
her right not to testify. This is the same remedy that we
adopted to address a criminal defendant's claim that he
or she did not validly waive the right to counsel, *see*
*Klessig,* 211 Wis. 2d at 206–07, or did not validly enter
a guilty plea, *see Bangert,* 131 Wis. 2d at 274–75.

 

¶ 69. Relying on our decision in *State v.*
*Livingston,* 159 Wis. 2d 561, 464 N.W.2d 839 (1991),
Denson urges us to adopt automatic reversal and a new
trial as the appropriate remedy for when a circuit court
does not conduct a colloquy with the defendant or when
there is otherwise no evidence in the record that the
defendant took a personal affirmative step to waive his
or her right not to testify.[13] *See Anderson,* 249 Wis. 2d
586, ¶ 25. However, as we explained in *Livingston,* the

---

[13] Denson also argues that a circuit court's complete failure
to engage a criminal defendant in an on-the-record colloquy
regarding his or her right not to testify should not be subject to
harmless error analysis. However, the harmless error rule has

709

remedy of a new trial for a defendant who did not, on the record, personally and affirmatively waive his or right to a jury trial is consistent with an express statutory mandate. 159 Wis. 2d at 573. Specifically, Wis. Stat. § 972.02(1) provides, in relevant part, that "criminal cases *shall* be tried by a jury . . . *unless* the defendant waives a jury in writing or by statement in open court . . . , on the record, with the approval of the court and the consent of the state." (Emphasis added.) In other words, pursuant to § 972.02(1), when a criminal defendant does not validly waive his or her right to a jury trial, "there must be a trial by jury." *Livingston,* 159 Wis. 2d at 573. On the other hand, when there is no statute that provides for a specific remedy for an invalid waiver of a fundamental right, as is the case with the right to testify and the right not to testify, it may be that "the ends of justice . . . can be served by allowing the defendant a postconviction hearing, [and] a new trial would be inappropriate." *Id.* at 572.

no application to this case. The harmless error rule prohibits reversal for errors, even constitutional ones, not affecting a party's substantial rights. *See State v. Harvey,* 2002 WI 93, ¶ 39, 254 Wis. 2d 442, 647 N.W.2d 189 (citing Wis. Stat. §§ 805.18, 972.11(1)). As a preliminary matter, we have concluded that a circuit court does not err by failing to engage a criminal defendant in an on-the-record colloquy regarding his or her right not to testify. More to the point, however, the State does not argue, and we do not adopt, the position that a circuit court's failure to conduct such a colloquy is harmless. Rather, we conclude that whether or not a circuit court conducts an on-the-record colloquy, once a defendant properly raises in a postconviction motion the issue of an invalid waiver of the right not to testify, the circuit court must conduct an evidentiary hearing to determine whether the defendant knowingly, voluntarily, and intelligently waived his or her right not to testify.

¶ 70. Accordingly, consistent with the remedy adopted in *Klessig* and *Bangert,* we conclude that once a defendant properly raises in a postconviction motion the issue of an invalid waiver of the right not to testify, the circuit court must conduct an evidentiary hearing to determine whether the defendant knowingly, voluntarily, and intelligently waived his or her right not to testify. The initial burden rests with the defendant to make a *prima facie* showing that he or she did not know or understand that he or she had the right not to testify. *See Bangert,* 131 Wis. 2d at 274. The burden then shifts to the State to demonstrate by clear and convincing evidence that the defendant knowingly, voluntarily, and intelligently waived his or her right not to testify. *See id.; Klessig,* 211 Wis. 2d at 207. In essence, the State will be required to demonstrate that the defendant knew he or she had the right not to testify, understood the consequences of waiving the right not to testify, and understood that the decision whether to testify was for him or her to make. To so demonstrate, the State may utilize the entire record and may examine both the defendant and the defendant's trial counsel at the evidentiary hearing. *See Bangert,* 131 Wis. 2d at 275 ("[P]ermitting the state to show by clear and convincing evidence that the totality of the circumstances demonstrates a knowing and voluntary plea in fact achieves the requirement of the constitutional standard."). If the State is able to satisfy its burden, then the conviction will stand. *Klessig,* 211 Wis. 2d at 207. On the other hand, if the State is unable to demonstrate by clear and convincing evidence that the defendant knowingly, voluntarily, and intelligently waived his or her right not to testify, then the defendant is entitled to a new trial. *See id.*

711

D. Denson knowingly, voluntarily, and intelligently waived his right not to testify.

¶ 71. In this case, the circuit court conducted a postconviction evidentiary hearing and concluded that the State met its burden of demonstrating by clear and convincing evidence that Denson knowingly, voluntarily, and intelligently waived his right not to testify. We agree.

¶ 72. At the close of the evidentiary hearing, the circuit court made several findings of historical fact. The circuit court found that Attorney Howard had consulted with Denson at least six times and that they had discussed at length Denson's corollary rights to testify and not to testify. The circuit court further found that the subject of those discussions included the advantages and disadvantages of testifying and the fact that Denson did not have to testify, even if Attorney Howard recommended otherwise. In addition, the circuit court denied that Denson was a naïve criminal defendant and in fact found Denson to be vocal and aggressive, especially concerning his opinions on counsel and defense strategy. Finally, the circuit court found that Denson wanted to defend his case by claiming self-defense and had lied when he alleged that Attorney Howard was never standby counsel.

¶ 73. All of these findings are supported by the record and are therefore not clearly erroneous. At the evidentiary hearing, Attorney Howard testified that he and Denson discussed at length Denson's right to testify and right not to testify and their respective advantages and disadvantages. Attorney Howard also testified that he informed Denson that the choice of whether or not to

testify was Denson's. The circuit court repeatedly remarked on Attorney Howard's credibility and accepted his testimony as true. "Because matters of credibility are solely within the province of the trial court," *Bryn v. Thompson,* 21 Wis. 2d 24, 31, 123 N.W.2d 505 (1963), we will not disturb the circuit court's finding.

¶ 74. The circuit court's finding that Denson was an experienced and vocal criminal defendant is also well supported by the record. Denson had 15 prior criminal convictions. Attorney Howard was his fifth attorney in this case alone, and Denson initially wanted Attorney Howard to serve as only standby counsel. Denson filed several pro se motions which, relatively speaking, were thorough and well-argued. In addition, the hearing and trial transcripts before us demonstrate that Denson was not hesitant to interrupt and speak to the circuit court directly.

¶ 75. Finally, at the evidentiary hearing, Denson himself testified that his strategy at trial was to show that he did not intentionally stab Tichenor.

¶ 76. Applying these facts to the relevant constitutional standard, we conclude that Denson knowingly, voluntarily, and intelligently waived his right not to testify. In particular, it is clear from Attorney Howard's testimony that Denson knew he had the right not to testify and understood that the choice of whether to testify was his to make. Indeed, when Denson himself was asked whether he "chose to testify," he answered, "Yes." Denson's knowledge and understanding of his right not to testify is further supported by the fact that he, through two of his attorneys, twice filed motions to sever and conduct a separate trial on the count of first-degree sexual assault, reasoning that joinder would unduly prejudice him "if he chooses to testify" to the two unrelated acts.

713

¶ 77. It is also clear from Attorney Howard's testimony that Denson understood the consequences of waiving his right not to testify. Specifically, Attorney Howard testified that he informed Denson that the State had the burden of proof such that Denson was not required to testify and that if Denson did take the stand, Denson would be subject to cross-examination and would have to admit to the number of his criminal convictions.

¶ 78. Finally, given the fact that Denson aggressively asserted himself throughout the proceedings and pushed for a case of self-defense, we find it highly unlikely that Denson blindly chose to testify.

¶ 79. For the foregoing reasons, we conclude that Denson knowingly, voluntarily, and intelligently waived his right not to testify.

## V. CONCLUSION

¶ 80. A criminal defendant's constitutional right not to testify is a fundamental right that must be waived knowingly, voluntarily, and intelligently. However, we conclude that circuit courts are not required to conduct an on-the-record colloquy to determine whether a defendant is knowingly, voluntarily, and intelligently waiving his or her right not to testify. While we recommend such a colloquy as the better practice, we decline to extend the mandate pronounced in *Weed.* In any case, once a defendant properly raises in a postconviction motion the issue of an invalid waiver of the right not to testify, an evidentiary hearing is an appropriate remedy to ensure that the defendant knowingly, voluntarily, and intelligently waived his or her right not to testify.

¶ 81. In this case, the circuit court conducted an evidentiary hearing and properly concluded that Denson knowingly, voluntarily, and intelligently waived his right not to testify.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 82. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I agree with the majority's determination that an evidentiary hearing is the appropriate remedy when the defendant's motion properly demonstrates that the defendant did not knowingly, intelligently, and voluntarily waive the right not to testify. I join the majority in affirming the circuit court's conclusion that the defendant in the present case knowingly, intelligently, and voluntarily waived his right not to testify.

¶ 83. I part company with the majority on the question whether an on-the-record colloquy with the defendant should be merely recommended as good practice or required. The majority adopts the former position; I would adopt the latter.[1]

---

[1] The court of appeals apparently agrees with my position. It stated:

> We have previously noted that we do "not possess any supervisory authority which would permit [us] to promulgate rules of criminal practice and procedure." . . . Rather, "Wisconsin's constitution and statutes limit such a law-developing or law-declaring function exclusively to the Wisconsin Supreme Court." Our constitution gives the supreme court supervisory authority over all of the courts of this state, but delegates such authority to the court of appeals only over "the courts in the district." A mandate that all courts in Wisconsin must conduct a colloquy to ensure a defendant knowingly and voluntarily waives the right not to testify must therefore come from the supreme court. Although we cannot require a colloquy, we do recommend it as good practice.

¶ 84. The right to testify on one's own behalf is a fundamental right.[2] Likewise, the right not to testify is a fundamental constitutional right.[3] Neither right is presumed to be invoked or waived.[4] Exercising either of the mutually exclusive (but complementary) fundamental rights necessarily requires the waiver of the other equally fundamental right.

¶ 85. I conclude that an on-the-record colloquy should be mandated because, as the court precisely stated in *State v. Klessig,* 211 Wis. 2d 194, 206, 564 N.W.2d 716 (1997): "Conducting such an examination of the defendant is the clearest and most efficient means of insuring that the defendant has validly waived his right . . . and of preserving and documenting that valid waiver for purposes of appeal and postconviction motions. Thus a properly conducted colloquy serves the dual purposes of ensuring that a defendant is not deprived of his constitutional rights and of efficiently guarding our scarce judicial resources. We hope that our reaffirmation of the importance of such a colloquy will encourage the circuit courts to continue their vigilance in employing such examinations."

*State v. Jaramillo,* 2009 WI App 39, 16–17, 316 Wis. 2d 538, 765 N.W.2d 855 (citations omitted).

[2] *State v. Weed,* 2003 WI 85, ¶ 37, 263 Wis. 2d 434, 666 N.W.2d 485 (quoting *Rock v. Arkansas,* 483 U.S. 44, 53 n.10 (1987)).

[3] U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."); Wis. Const. art. 1, § 8 ("No person . . . may be compelled in any criminal case to be a witness against himself or herself.").

[4] Courts indulge every reasonable presumption against waiver of constitutional rights and "do not presume acquiescence in the loss of fundamental rights." *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938).

¶ 86. For waiver of the right to testify, this court has already balanced the benefits and risks of a mandatory colloquy in favor of requiring an on-the-record colloquy.[5] Nothing supports the majority's arriving at a different balance in the present case when addressing a defendant's waiver of the right not to testify.

¶ 87. The Wisconsin Criminal Jury Instructions Committee supports mandating a colloquy, explaining "that a similar inquiry [to the one made when a defendant seeks to waive the right to testify] should be conducted when the defendant decides to testify, because a constitutional right is involved regardless of the decision that is made."[6]

¶ 88. The Wisconsin Criminal Jury Instructions Committee supports approaching the waiver of both the right to testify and the right not to testify in a consistent manner. Special Material 28 (SM-28) provides a series of suggested inquiries that a court should engage in with a defendant and defense counsel to ensure a waiver of the right to testify or the right not to testify is knowing, intelligent, and voluntary.[7] The questions provided are merely suggestions. "If the defendant's replies indicate a possible lack of understanding,

[5] *State v. Weed*, 263 Wis. 2d 434, at ¶ 41.

[6] 3 Wis JI—Criminal, SM-28: Inquiry Regarding the Decision Whether to Testify, Comment at 2.

[7] Wis JI—Criminal SM-28 is entitled "INQUIRY REGARDING THE DECISIONS WHETHER TO TESTIFY," and provides:

THE FOLLOWING IS INTENDED FOR USE WHEN THE DEFENDANT HAS DECIDED TO TESTIFY AND WHEN THE DEFENDANT SEEKS TO WAVIE THE RIGHT TO TESTIFY

DIRECT THE FOLLOWING QUESTIONS TO THE DEFENDANT:

"Do you understand that you have a constitutional right to testify?"

follow-up questions or allowing additional consultation between the defendant and defense counsel may be advisable."[8]

¶ 89. Requiring a colloquy to waive both fundamental, complementary constitutional rights makes sense: it creates a consistent approach and should not present a challenge to the circuit courts.

¶ 90. The majority's approach creates inconsistent requirements for the circuit court in dealing with the waiver of these complementary fundamental constitutional rights. In the process, the majority provides an inconsistent analysis, ultimately providing a confusing directive.

"And do you understand that you have a constitutional right *not* to testify?"

"Do you understand that the decision whether to testify is for you to make?"

"Has anyone made any threats or promises to you to influence your decision?"

"Have you discussed your decision whether or not to testify with your lawyer?"

"Have you made a decision?"

"What is that decision?"

DIRECT THE FOLLOWING QUESTION TO DEFENSE COUNSEL:

"Have you had sufficient opportunity to thoroughly discuss this case and the decision whether to testify with the defendant?"

"Are you satisfied that the defendant is making the decision knowingly, intelligently, and voluntarily?"

THE COURT SHOULD STATE THE APPROPRIATE FINDING ON THE RECORD

[8] 3 Wis JI—Criminal, SM-28: Inquiry Regarding the Decision Whether to Testify, Comment at 2.

¶ 91. In one breath, the majority portends the danger of influence and encroachment into the attorney-client relationship when a circuit court engages in an on-the-record colloquy regarding the right not to testify. Majority op., ¶ 66. In the next breath, the majority advises that conducting a colloquy "is the clearest and most efficient means" of ensuring that a defendant has validly waived the right not to testify, and so recommends it. Majority op., ¶ 67.

¶ 92. As I see it, requiring an on-the-record colloquy ensures a defendant is not deprived of a fundamental constitutional right and limits the need for a retrospective evidentiary hearing.

¶ 93. Because constitutional rights and the interests of trial and appellate judicial efficiency are advanced by a consistent and clear bright-line rule, I would mandate an on-the-record colloquy regarding a defendant's waiver of the right not to testify.

¶ 94. For the foregoing reasons, I concur.

¶ 95. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.