STATE of Wisconsin, Plaintiff-Respondent,

v.

JIMMIE R.R., Defendant-Appellant.

Court of Appeals

*No. 02–1771–CR. Oral argument April 10, 2003.—Decided
August 25, 2004.*

## 2004 WI App 168

(Also reported in 688 N.W.2d 1.)

447

450

On behalf of the defendant-appellant, there was a brief and oral argument by *Martha K. Askins*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Diane M. Welsh*, assistant attorney general. There was oral argument by *Lara M. Herman*.

Before Brown, Nettesheim and Snyder, JJ.

¶ 1. BROWN, J.   Jimmie R.R., under oath at trial, denied sexually assaulting his five-year-old daughter. Following his convictions for sexual assault and incest but prior to sentencing, Jimmie changed his story at the urging of his defense presentence investigator and admitted committing the assaults. Subsequently, the district attorney charged Jimmie with perjury, theorizing that Jimmie had lied under oath to avoid conviction and then admitted committing the crimes during the

sentencing phase in hopes of receiving a lighter sentence. At the perjury trial, without any objection from Jimmie's attorney, both the court-ordered presentence investigator and Jimmie's own presentence investigator testified. The primary issue before us is whether Jimmie's counsel's failure to object to their testimony constitutes ineffective assistance of counsel.

¶ 2. We heard oral argument in this case on April 10, 2003. We placed this case on hold pending the supreme court's decision in *State v. Greve*, 2004 WI 69, 272 Wis. 2d 444, 681 N.W.2d 479, a case which we certified to the supreme court and has now been released. In *Greve*, the court held that *State v. Crowell*, 149 Wis. 2d 859, 440 N.W.2d 352 (1989), and WIS. STAT. § 972.15 (2001–02)[1] require court-ordered presentence investigation reports to remain confidential unless the court authorizes their release, but do not require confidentiality for a defendant's sentencing memorandum. *See Greve*, 681 N.W.2d 479, ¶¶ 1–2. We, therefore, hold that Jimmie's counsel's failure to object to the testimony of the court-ordered presentence investigator constitutes deficient performance, but his failure to object to the testimony of the defense presentence investigator does not. However, because the defense presentence investigator's testimony was properly before the jury, there was sufficient evidence to convict Jimmie of perjury and counsel's error was not prejudicial. We also reject Jimmie's other claims. We affirm the judgment of conviction and the order denying postconviction relief.

¶ 3. The pertinent facts are as follows. In 1997, the State charged Jimmie with three counts of first-degree sexual assault of a child and three counts of

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

incest with a child for an incident involving his five-year-old daughter, Cassandra. The case proceeded to a jury trial. Jimmie testified on his own behalf and denied ever having touched Cassandra sexually. The jury convicted Jimmie on all counts.

¶ 4. Following the convictions, the court ordered a presentence investigation. Douglas Geske, a probation and parole agent, was assigned to prepare the presentence investigation report. Geske interviewed Jimmie on at least three occasions as part of his presentence investigation. Jimmie initially told Geske that Cassandra's mother and her son were framing Jimmie for an offense that the son actually committed. Geske testified that the second time they met, Jimmie told him that he was very intoxicated on the day the assaults took place and he could not remember what happened.

¶ 5. Prior to sentencing, Jimmie's counsel hired Will Swierenga, an independent presentence investigator, to prepare a defense sentencing memorandum. Swierenga recalled meeting with Jimmie twice. When Swierenga began the interview process, Jimmie denied committing the offenses; he blamed the victim for the assaults. Swierenga walked Jimmie through the process of breaking down his denial. During this process, it was Swierenga's practice to look for signs of remorse and victim empathy, which he believed could help mitigate Jimmie's sentence. In an effort to facilitate the process, Swierenga informed Jimmie that it would be to his benefit for him to admit to Swierenga that he had engaged in wrongful conduct. As Jimmie gained confidence in the process of working through his denial, he was able to admit his involvement in the incident to Swierenga.

¶ 6. Following Jimmie's admission, Swierenga called Geske and informed him that Jimmie had

454

changed his story and would like to speak with him again. Geske then met with Jimmie a final time. According to Geske, he did not tell Jimmie during this final interview to confess nor did he tell him that it would be better for him if he would admit committing the assaults because he might get a lighter sentence. However, Jimmie ultimately confessed to Geske.

¶ 7. Swierenga testified at the sentencing hearing, but Geske did not. Swierenga's testimony established that after initially denying the crimes, Jimmie admitted involvement in the crimes. The court sentenced Jimmie to sixty-four years in prison.

¶ 8. In 2001, the State filed a criminal complaint charging Jimmie with perjury, stemming from Jimmie's testimony at his trial for sexual assault. The State alleged that Jimmie committed perjury when he testified on his own behalf and denied committing the assaults. The State's witnesses were an officer who investigated the sexual assault allegations, Geske, Swierenga and Cassandra, who appeared by a videotaped statement that had also been played at the sexual assault trial. Jimmie's counsel did not object to either Swierenga's or Geske's testimony, both of whom testified about the course of events leading up to Jimmie's admission. The jury convicted Jimmie of perjury.

¶ 9. Jimmie filed a postconviction motion alleging that he was denied the effective assistance of counsel in a variety of ways and that he should get a new trial on those grounds and in the interests of justice. His primary claim was that he did not receive effective assistance of counsel in the perjury trial because his attorney failed to object to Geske's testimony. He reasoned that pursuant to *Crowell* and its interpretation of

WIS. STAT. § 972.15, presentence investigation reports are confidential and cannot be used against a defendant at trial.

¶ 10.    At the postconviction motion hearing, Jimmie's trial counsel testified that the theory of defense in the perjury trial was that Jimmie was truthful when he testified at his sexual assault trial and denied the charges, but that Jimmie lied to the presentence investigators in the hopes of receiving a lighter sentence. When asked about the admissibility of Geske's testimony, his attorney testified that he did not research the admissibility of information obtained during the presentence investigation as evidence, did not consider moving to strike Geske's testimony and had not reviewed *Crowell* prior to the perjury trial. He stated that he would have objected to Geske's testimony had he been aware of *Crowell* prior to the perjury trial. The trial court denied Jimmie's postconviction motion. Jimmie now appeals.

■■■■

¶ 11.    As noted at the outset, the primary issue in this appeal is Jimmie's ineffective assistance of counsel claim pertaining to his counsel's failure to object to Swierenga's and Geske's testimony at the perjury trial. To show ineffective assistance of counsel, the defendant must show that the attorney's performance was deficient and that such performance prejudiced the defense. *State v. Pitsch*, 124 Wis. 2d 628, 633, 369 N.W.2d 711 (1985). Performance is deficient if it falls outside the range of professionally competent representation. *See id.* at 636–37. We measure performance by the objective standard of what a reasonably prudent attorney would do in similar circumstances. *See id.*; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). We

indulge in a strong presumption that counsel acted reasonably within professional norms. *Pitsch,* 124 Wis. 2d at 637.

¶ 12.   As to prejudice, it is not enough for a defendant to merely show that the alleged deficient performance had some conceivable effect on the outcome. *State v. Erickson,* 227 Wis. 2d 758, 773, 596 N.W.2d 749 (1999). Rather, the defendant must show that, but for the attorney's error, there is a reasonable probability that the result of the trial would have been different. *Id.*

¶ 13.   A claim of ineffective assistance of counsel presents a mixed question of fact and law. *State v. O'Brien,* 223 Wis. 2d 303, 324–25, 588 N.W.2d 8 (1999). Upon appellate review, we will affirm the trial court's findings of historical fact concerning counsel's performance unless those findings are clearly erroneous. *Id.* However, the ultimate question of effective assistance is one of law, subject to independent review. *Id.* at 325.

¶ 14.   The thrust of the parties' dispute in their briefs and at oral argument concerned the application of *Crowell,* which was the lead case at the time addressing the confidentiality of presentence investigation reports, to the facts of this case. Jimmie argued that his counsel should have objected to Swierenga's and Geske's testimony on the grounds that the confidentiality requirements espoused in *Crowell* and Wis. STAT. § 972.15 prohibited their use. He further submitted that his counsel's failure to object to the testimony was prejudicial. The State, on the other hand, maintained that *Crowell* had to be limited to its facts. According to the State, *Crowell* and § 972.15 only prohibited use of information obtained during the presentence investigation in a subsequent trial concerning the same charges,

but did not prohibit use of the information in subsequent prosecutions for different offenses.

¶ 15. As explained, since the parties briefed and argued the issue, the supreme court has released *Greve*. In *Greve*, the supreme court revisited *Crowell* and Wis. Stat. § 972.15 and considered their application to defense sentencing memoranda. Therefore, we will discuss *Greve*, in addition to *Crowell*, in our analysis of Jimmie's ineffective assistance of counsel claim.

¶ 16. In *Crowell*, the defendant was allowed to withdraw his guilty plea after the presentence investigation had already taken place. *Crowell*, 149 Wis. 2d at 861–62. During the ensuing jury trial, the probation and parole officer who conducted the investigation was allowed to testify about certain inculpatory statements Crowell made during the presentence investigation and Crowell was convicted. *Id.* at 862. On appeal, Crowell argued that confidentiality protections built into Wis. Stat. § 972.15(4) prohibited the officer from testifying at the subsequent trial. Section 972.15, entitled "Presentence investigation," provides, in relevant part:

> **(1)** After a conviction the court may order a presentence investigation, except that the court may order an employee of the department to conduct a presentence investigation only after a conviction for a felony.
>
> . . . .
>
> **(4)** After sentencing, unless otherwise authorized under sub. (5) or ordered by the court, the presentence investigation report shall be confidential and shall not be made available to any person except upon specific authorization of the court.

¶ 17. After examining the purposes of a presentence investigation and the confidentiality provisions of

458

WIS. STAT. § 972.15, the court held that the trial court erred in allowing the officer to testify at trial about the statements Crowell made during the investigation. *Crowell*, 149 Wis. 2d at 872–73. The court explained that the legislature intended to preclude a later use of presentence investigations in order to ensure the continued cooperation of defendants in the presentence investigation process. *Id.* at 869. "The quality and accuracy of the presentence investigation report [and therefore its helpfulness to the court] depend in large measure on the cooperation of the defendant." *Id.* If a defendant realizes that what he or she tells the presentence investigator can be used against him or her at trial, he or she "would be reticent to reveal potentially dangerous facts, and the information gathering process for sentencing purposes would be significantly inhibited." *Id.*

¶ 18. In *Greve*, the court both reaffirmed *Crowell*'s holding that WIS. STAT. § 972.15 requires court-ordered presentence investigation reports to remain confidential and spoke to the question of whether *Crowell* and § 972.15 similarly protect defense sentencing memoranda. There, Greve pled guilty to first-degree sexual assault of a child. *Greve*, 681 N.W.2d 479, ¶ 3. In his defense sentencing memorandum submitted to the court, Greve made inculpatory statements regarding the sexual assault for which he was convicted. *Id.* Greve successfully appealed the judgment of conviction. *Id.*, ¶ 4. After remand, the State sought permission to introduce Greve's inculpatory statements in the sentencing memorandum into evidence at the subsequent trial. *Id.*, ¶ 5.

¶ 19. On appeal, Greve contended that because the court concluded in *Crowell* that WIS. STAT. § 972.15 prevents the subsequent use of a court-ordered presen-

459

tence investigation report, and a defendant's sentencing memorandum serves the same purpose as a court-ordered presentence investigation report, § 972.15 protected his sentencing memorandum as well. *Greve*, 681 N.W.2d 479, ¶ 13. The State argued that both the statute and *Crowell* apply only to court-ordered presentence investigation reports. *Greve*, 681 N.W.2d 479, ¶ 13.

¶ 20. A majority of our supreme court held that neither the language of Wis. Stat. § 972.15 nor its decision in *Crowell* applies to a defendant's sentencing memorandum. *Greve*, 681 N.W.2d 479, ¶ 2. The court first walked through each of the subsections of § 972.15 individually, explaining that because each subsection specifically referred only to court-ordered presentence investigations, the legislature could not have intended for a defendant's privately prepared sentencing memorandum to be included within the ambit of the statute. *See Greve*, 681 N.W.2d 479, ¶¶ 16–20. The court then rejected Greve's argument that *Crowell* was broadly written and therefore elastic enough to be expanded to apply its concepts to a defendant's sentencing memorandum. *Greve*, 681 N.W.2d 479, ¶ 21. The court reasoned that *Crowell* was strictly a statutory interpretation case which applied only to court-ordered presentence investigations. *Greve*, 681 N.W.2d 479, ¶ 21. The majority of the court also held that public policy did not justify extending confidentiality to statements a defendant makes to the preparer of his or her sentencing memorandum and a plurality of the court concluded that a defendant's constitutional right to due process would not be violated by the use of his or her sentencing memorandum in a subsequent criminal

trial. *Id.*, ¶¶ 2, 39. Accordingly, the court held that Greve's sentencing memorandum was admissible at the second trial.

██

¶ 21.   Having set forth the applicable law, we now apply it first to Swierenga's and then to Geske's testimony. *Greve* provides a direct response to Jimmie's intimations that his counsel should have used *Crowell* as a springboard for objecting to Swierenga's testimony. The *Greve* court's discussion of *Crowell* and WIS. STAT. § 972.15 makes it clear that there is no right to confidentiality of information obtained during a defense presentence investigation. Thus, Jimmie's counsel's failure to object to Swierenga's testimony did not constitute deficient performance.

¶ 22.   We anticipate that Jimmie would argue that the interlocking nature of Swierenga's and Geske's testimony demands that we create an exception to *Greve*. We expect that Jimmie would argue that because Swierenga contacted Geske and relayed to him the information about Jimmie's confession, he was an agent of Geske and, therefore, Swierenga's testimony would be prohibited under *Crowell*. If this is to be Jimmie's argument, we reject it. Jimmie's counsel hired Swierenga. Swierenga advised Jimmie that the court looks kindly on expressions of remorse and empathy. In obtaining the confession, Swierenga acted on his own, based on his professional expertise, and such action was independent of Geske. Swierenga testified to this at the sentencing hearing for the sexual assault case. Thus, the State had an independent basis for charging Jimmie with perjury. Accordingly, we reject what we anticipate would be Jimmie's argument regarding the creation of an exception to *Greve*.

¶ 23. While Swierenga's testimony was admissible, Geske's was not. *Crowell*, which *Greve* reaffirmed, plainly instructs that information obtained during a court-ordered presentence investigation must remain confidential unless the court has specifically authorized its use under the limited confidentiality exception provided in WIS. STAT. § 972.15(4). Indeed, Jimmie's counsel admitted at the *Machner*[2] hearing that he had not researched the admissibility of Geske's testimony prior to the perjury trial and had he read *Crowell*, he would have objected to Geske's testimony. Because Jimmie's counsel did not object to Geske's testimony, the court did not have the opportunity to review the propriety of authorizing the release of the information Geske obtained during the investigation.

¶ 24. The State's attempt to limit *Crowell* to cases where the State seeks to use information from the presentence investigation at a trial following the withdrawal of a guilty plea must fail. The rationale behind the *Crowell* court's decision supports a broader application of WIS. STAT. § 972.15. The *Crowell* court was concerned that if a defendant was fearful that the information he or she provided an investigator could be used at a subsequent trial to obtain a conviction, the defendant would be less forthcoming with potentially dangerous facts, thereby jeopardizing the sentencing process. This concern is present regardless of whether that subsequent trial concerns the same or a different charge. Accordingly, we reject the State's argument that Geske's testimony was properly before the court and

---

[2] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

conclude that Jimmie's counsel's failure to object to Geske's testimony constitutes deficient performance.

¶ 25. Because we determined that Jimmie's counsel performed in a deficient manner, we now must address whether his counsel's deficient performance prejudiced his defense. The central issue for the jury in the perjury case was one of credibility—whether to believe Jimmie's story that he told the truth while he was on the stand at the sexual assault trial. Although Swierenga did not testify that Jimmie lied during the sexual assault trial, he did testify about the process he used with sex offenders to help them go from denial to responsibility. He testified that it was his practice to inform defendants, such as Jimmie, that it would be to their benefit to tell the truth and show remorse at the sentencing stage because it could potentially mitigate the sentence they received. His testimony demonstrated that he walked Jimmie through this process and saw Jimmie progress from blaming the victim to accepting responsibility for the crime. In light of Swierenga's testimony, the impact of Geske's testimony—which only served to confirm that Jimmie changed his story during the sentencing phase—on the jury's credibility determination was minimal. Our confidence in the outcome of the trial, therefore, is not undermined by the failure of Jimmie's counsel to object to Geske's testimony. We reject Jimmie's ineffective assistance of counsel claim as it pertains to Geske's testimony.

¶ 26. Having ruled as we did, we take a moment to express our concerns about the policy implications of this decision. On the one hand, it is important to encourage defendants to tell the truth on the stand, *see State v. Canon*, 2001 WI 11, ¶ 9, 241 Wis. 2d 164, 622 N.W.2d 270 (recognizing that the crime of perjury

erodes the integrity of our judicial system), and it is equally important that the district attorney have the power to prosecute defendants when they fail to do so. On the other hand, we want to rehabilitate sexual offenders by encouraging them to work through their denial and admit their involvement in the crime. As noted by counsel at oral argument, admission of criminal activity is the single most important treatment goal for sexual offenders. Moreover, in order for the trial court to make appropriate sentencing decisions, it needs to be presented with accurate and reliable information. In order to facilitate this goal, it is important for the court to foster an environment where defendants feel comfortable confessing their guilt without repercussions.

¶ 27. Thus, we are presented with competing interests. We are concerned that the regular use of the perjury statutes may chill free and unfettered posttrial admissions, which are so necessary for rehabilitation and sentencing. However, a misuse of prosecutorial discretion challenge is not before us and we cannot address it here. Further, should prosecutors use this decision to charge defendants who admit guilt during the sentencing phase with perjury, the propriety of such charging decision is a question best left to the supreme court for a later date.

¶ 28. Jimmie also raises three other arguments on appeal. He claims that (1) he was entitled to *Miranda*[3] warnings prior to the court-ordered presentence investigation, (2) his counsel was ineffective for failing to object to the introduction of evidence that he had been convicted of sexual assault, (3) his five-year-old daughter's videotaped statements were inadmissible

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

and (4) he is entitled to a new trial in the interests of justice. We reject each of these arguments in seriatim.

■

¶ 29.   In arguing that he is entitled to a new trial because he was not advised of his *Miranda* rights before making incriminating statements, Jimmie recognizes that the safeguards created in *Miranda* are inapplicable during a presentence interview where the interview is not accusatorial in nature. *See Estelle v. Smith*, 451 U.S. 454, 466–69 (1981); *see also State v. Knapp*, 111 Wis. 2d 380, 330 N.W.2d 242 (Ct. App. 1983). He contends, however, that the State's subsequent prosecution of him for perjury "converted the presentence process from an investigational process into an accusatorial one."

■

¶ 30.   The trial court's findings of evidentiary or historical facts will not be overturned unless clearly erroneous. *State v. Turner*, 136 Wis. 2d 333, 343–44, 401 N.W.2d 827 (1987). However, questions of constitutional fact are subject to an independent appellate review and require an independent application of the constitutional principles involved to the facts as found by the trial court. *Id.* at 344.

¶ 31.   The law is set forth in *Estelle*, a capital murder case from Texas. In Texas, capital cases are tried in bifurcated stages—a guilt phase and a penalty phase. *Estelle*, 451 U.S. at 457. Prior to trial, the trial court ordered a psychiatric examination of the defendant to determine whether he was competent to stand trial. *Id.* at 456–57.

¶ 32.   After the defendant was convicted, the penalty phase of the trial was conducted. *Id.* Because the state was seeking the death penalty, the state had the burden, under Texas law, to show that the defendant

would continue to endanger society. *Id.* at 457–58. To prove this element, the state introduced the testimony of the psychiatrist who had performed the pretrial examination. *Id.* at 458–59. The psychiatrist testified that based on his interview of the defendant, it was likely the accused would commit similar criminal acts in the future if given the opportunity to do so. *Id.* at 459–60.

¶ 33. The Supreme Court set aside the resulting death sentence, ruling that this use of the psychiatric interview violated *Miranda. Estelle*, 451 U.S. at 468–69. The *Estelle* Court required *Miranda* warnings because the psychiatrist went beyond simply reporting to the court his conclusions regarding competency. Rather, the results of his inquiry were used by the State to prove dangerousness, an element upon which the State still had the burden of proof for the penalty phase. *Estelle*, 451 U.S. at 466–67. The State had used the defendant's own statements, "unwittingly made [to the psychiatrist] without an awareness that he was assisting the State's efforts to obtain the death penalty." *Id.* at 466. It was under these distinct circumstances that the defendant's Fifth Amendment privilege was implicated. *See id.*

¶ 34. Here, unlike *Estelle*, the presentence investigation was not part of the accusatory stage of a criminal proceeding. Unlike the psychiatrist in *Estelle*, Geske could not have envisioned that he was going to be called upon to testify at an accusatory stage of a separate criminal proceeding. While *Estelle* does not say whether the psychiatrist had as part of his mission the investigation of dangerousness for the purpose of testifying at the penalty stage, there is nothing here to suggest that Geske was setting Jimmie up for a later perjury charge. Geske merely obtained Jimmie's statements in an effort to meet his obligation to develop an

accurate appraisal of Jimmie's personality, social circumstances and general pattern of behavior, which then assisted the sentencing court in making an informed, thoughtful, and intelligent sentencing decision. Geske's interview was simply a routine and integral part of the sentencing process. Because the interview was routine and was not conducted while Jimmie's jeopardy was still in doubt, Jimmie, unlike the defendant in *Estelle*, was not entitled to *Miranda* warnings at his presentence interview.

¶ 35.    In the midst of his *Miranda* argument in his brief, Jimmie also suggests that he was entitled to counsel at the presentence interview. Jimmie does not substantiate his claim of entitlement to counsel with any legal analysis or citation. Further, as Jimmie himself recognizes, in *Knapp*, we held that the Sixth Amendment does not entitle a defendant to the presence of an attorney at a presentence interview. *Knapp*, 111 Wis. 2d at 381. We, therefore, decline to address the right to counsel issue further. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶ 36.    Jimmie raises two challenges to his attorney's concession that the State could introduce evidence that he had been convicted of sexual assault. Jimmie first argues that his counsel was deficient for failing to object to the evidence of his conviction on the grounds that it was irrelevant. He claims the conviction was irrelevant because the verdict "does not make it either more probable or less probable that Jimmie lied on the witness stand."

¶ 37.    However, Jimmie's own theory of defense, which was entirely reasonable given the circumstances of the case, makes the conviction relevant. At the

*Machner* hearing, Jimmie's attorney stated: "Our theory of defense was that [Jimmie] lied to Will Swierenga and to Doug Geske to somehow acquire a lesser sentence." It would be illogical, if not impossible, to advance this theory of defense without the jury knowing that Jimmie had been convicted in the sexual assault trial. The evidence of his conviction supports his claim that he was motivated to lie only after wrongly being found guilty in an effort to obtain a lesser sentence. Jimmie's counsel simply could not have in good conscience objected to the conviction on the grounds that it was irrelevant.

¶ 38. Jimmie next suggests that the evidence of his conviction by a jury should have been excluded because it "constituted opinion evidence that Jimmie did not tell the truth when he denied committing the assaults[,]" thus "invad[ing] the province of the perjury jury." Jimmie claims his position is supported by the holdings of *State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984), and *State v. Kuehl*, 199 Wis. 2d 143, 149, 545 N.W.2d 840 (Ct. App. 1995), which prohibit a witness, expert or otherwise, to give an opinion either on direct or cross-examination that another mentally and physically competent witness is telling the truth. This argument is without merit. Put simply, a jury is not a witness and a verdict is not an opinion. Because we conclude that Jimmie's attorney's concession that the State could introduce evidence of Jimmie's conviction did not constitute deficient performance, we reject his second ineffective assistance of counsel claim.

¶ 39. Jimmie next claims that the trial court erred in admitting into evidence the videotape of his

five-year-old daughter under the residual exception to the hearsay rule, WIS. STAT. § 908.03(24). He argues that WIS. STAT. § 908.08 is the sole vehicle through which videotaped statements of children can be admitted and Cassandra's videotaped statements do not satisfy the admissibility requirements of § 908.08. The State responds that the plain language of § 908.08(7) permits a court to admit a child's videotaped statement under any other hearsay exception that may apply to the statement, including the residual hearsay exception, and that Cassandra's statements qualified for admission under the residual hearsay exception.[4]

---

[4] WISCONSIN STAT. § 908.08, entitled "Videotaped statements of children," provides in pertinent part:

**(1)** In any criminal trial or hearing . . . the court or hearing examiner may admit into evidence the videotaped oral statement of a child who is available to testify, as provided in this section.

**(2)**(a) Not less than 10 days prior to the trial or hearing, or such later time as the court or hearing examiner permits upon cause shown, the party offering the statement shall file with the court or hearing officer an offer of proof . . . . That party shall give notice of the offer of proof to all other parties, including notice of reasonable opportunity for them to view the videotape prior to the hearing under par. (b).

(b) Prior to the trial or hearing in which the statement is offered and upon notice to all parties, the court or hearing examiner shall conduct a hearing on the statement's admissibility. At or prior to the hearing, the court shall view the videotape. At the hearing, the court or hearing examiner shall rule on objections to the statement's admissibility in whole or in part . . . .

**(3)** The court or hearing examiner shall admit the videotape statement upon finding all of the following:

(a) That the trial or hearing in which the videotape statement is offered will commence:

1. Before the child's 12th birthday . . .

469

¶ 40. Since the parties submitted their briefs in late 2002, we have partially resolved their dispute in another case. In *State v. Snider*, 2003 WI App 172, ¶¶ 1, 16, 266 Wis. 2d 830, 668 N.W.2d 784, *review denied,* 2003 WI 140, 266 Wis. 2d 62, 671 N.W.2d 849 (Wis. Oct. 1, 2003) (No. 02–1628–CR), we held that WIS. STAT. § 908.08(7) permits a trial court to admit a child's videotaped statement under the residual hearsay exception without requiring compliance with other provisions of § 908.08. We, therefore, next consider whether the trial court properly admitted Jimmie's daughter's statements pursuant to WIS. STAT. § 908.03(24), the residual hearsay exception.[5] The admission of out-of-

. . . .

[2.](b) That the videotape is accurate and free from excision, alteration and visual or audio distortion.

(c) That the child's statement was made upon oath or affirmation or, if the child's developmental level is inappropriate for the administration of an oath or affirmation in the usual form, upon the child's understanding that false statements are punishable and of the importance of telling the truth.

(d) That the time, content and circumstances of the statement provide indicia of its trustworthiness.

(e) That admission of the statement will not unfairly surprise any party or deprive any party of a fair opportunity to meet allegations made in the statement.

. . . .

**(7)** At a trial or hearing under sub. (1), a court or a hearing examiner may also admit into evidence a videotape oral statement of a child that is hearsay and is admissible under this chapter as an exception to the hearsay rule.

[5] WISCONSIN STAT. § 908.03(24), the residual hearsay exception, provides: "A statement not specifically covered by any of

court statements pursuant to an exception to the hearsay rule is a determination left to the discretion of the trial court. *State v. Huntington*, 216 Wis. 2d 671, 680, 575 N.W.2d 268 (1998).

¶ 41. Here, the trial court properly looked to *State v. Sorenson*, 143 Wis. 2d 226, 245–46, 421 N.W.2d 77 (1988), which sets out the requirements for admitting into evidence the hearsay statements of child sexual assault victims under the residual exception to the hearsay rules, to support its conclusion that the videotaped statements were admissible. In *Sorenson,* the supreme court held that because there is "a compelling need for admission of hearsay arising from young sexual assault victims' inability or refusal to verbally express themselves in court . . . use of the residual [hearsay] exception [under WIS. STAT. § 908.03(24)] is an appropriate method to admit these statements if they are otherwise proven sufficiently trustworthy." *Sorenson,* 143 Wis. 2d at 243. Under the residual exception, hearsay evidence may be admitted at trial if it possesses " 'circumstantial guarantees of trustworthiness' comparable to those existing for enumerated exceptions." *Id.* (citation omitted).

¶ 42. We have already had the opportunity to review Cassandra's statements for their trustworthiness. In *State v. Jimmie R.R.*, 2000 WI App 5, ¶¶ 2, 38, 45, 232 Wis. 2d 138, 606 N.W.2d 196, we held that the trial court properly admitted Cassandra's statements pursuant to WIS. STAT. § 908.08(3) because Cassandra "underst[ood] that false statements are punishable and of the importance of telling the truth." Our discussion in *Jimmie R.R.* concerning Cassandra's responses to

---

the foregoing exceptions but having comparable circumstantial guarantees of trustworthiness."

specific questions about telling the truth reveals that Cassandra possessed an appreciation of the difference between truth and falsehood. *See Jimmie R.R.*, 232 Wis. 2d 138, ¶¶ 40–45. Further, there is no indication that the child had difficulty communicating with or comprehending questions from the interviewers or that her answers were at all false or deceitful. Finally, as noted in *Jimmie R.R.*, the essential information conveyed by the videotape was corroborated by other admitted evidence. *Id.*, ¶¶ 46–49 (citing the testimony of Cassandra's mother, Cassandra's brother and the interviewers, all of which substantiated Cassandra's story). Given these circumstances, we conclude that the *Sorenson* trustworthiness requirements were met and the trial court properly admitted the videotape into evidence pursuant to WIS. STAT. § 908.03(24).

¶ 43.   Finally, Jimmie asks this court to order a new trial in the interests of justice because, he claims, the real controversy was not fully tried. He maintains that the arguments we rejected in our preceding discussions support his claim. He also contends that the prosecutor asked improper questions of him on cross-examination. We have reviewed the record and fail to find any impropriety necessitating a new trial. Since we have rejected all of Jimmie's alleged errors, we decline to order a new trial. *See Mentek v. State*, 71 Wis. 2d 799, 809, 238 N.W.2d 752 (1976) ("Zero plus zero equals zero.").

*By the Court.*—Judgment and order affirmed.