STATE of Wisconsin, Plaintiff-Respondent,

v.

Mark J. LIBECKI, Defendant-Appellant.†

Court of Appeals

*No. 2012AP663CR. Submitted on briefs January 23, 2013.
—Decided March 27, 2013.*

2013 WI App 49

(Also reported in 830 N.W.2d 271.)

† Petition for Review dismissed April 30, 2013.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael J. Backes* of Shorewood.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Jeffrey J. Kassel*, assistant attorney general.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶ 1. BROWN, C.J.    Mark Libecki appeals from his judgment of conviction of first-degree intentional homi-

cide in the 1999 stabbing death of Theresa Wesolowski and from the order denying his motion for a new trial. The chief issue in Libecki's appeal relates to evidence of Wesolowski's blood, discovered in the back seat of the Ford Explorer that Libecki owned at the time of Wesolowski's murder. This blood evidence was discovered following Libecki's immunized, compelled testimony at a closed hearing in John Doe proceedings[1] concerning Wesolowski's murder.

¶ 2.  At trial, Libecki's defense hinged on the story he first gave in those John Doe proceedings, that a third party, a since-deceased coworker dealing in drugs, killed Wesolowski in the backseat of Libecki's Explorer. That story provided an alternative explanation for the physical evidence linking Libecki to the scene, and the blood evidence that Libecki now complains about was particularly consistent with his version of the events.

¶ 3.  Libecki argues that nonetheless his Fifth Amendment right against compelled self-incrimination was violated because the circuit court was required to establish, in a personal colloquy on the record, that Libecki wished to knowingly and voluntarily waive his immunity as to the blood evidence. In the alternative, Libecki argues that he received ineffective assistance of counsel when his trial counsel advised him not to object to the admission of the blood evidence and advised him to agree to the State's late amendment of the charge

[1] A John Doe proceeding is an investigatory procedure authorized by WIS. STAT. § 968.26 (2011–12). It "serves both as an inquest into the discovery of crime and as a screen to prevent 'reckless and ill-advised' prosecutions." *State ex rel. Reimann v. Circuit Court for Dane Cnty.*, 214 Wis. 2d 605, 621, 571 N.W.2d 385, 391 (1997) (citation omitted).

All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

against him. Libecki also claims that a new trial is required in the interests of justice.

¶ 4.  We reject all of Libecki's arguments and affirm.

*Facts*

¶ 5.  Wesolowski and Libecki both worked nights at a manufacturing plant in Germantown. At about 5:30 a.m. on May 28, 1999, a first-shift worker found Wesolowski's body by the side of a road near the plant, lying in a drainage ditch beside her car. She had been stabbed to death. Police interviewed all of the plant employees who worked the night before, including Libecki. At the time of that initial interview, Libecki told police that he left work at the same time as Wesolowski, around 11 p.m., and talked to her briefly, but did not see her leave. He also mentioned a rumor that Wesolowski had a jealous, violent ex-boyfriend.

¶ 6.  The initial investigation failed to link anyone to Wesolowski's murder, and in 2001 a John Doe proceeding was convened to gather more evidence. In those 2001 proceedings, Libecki (along with many other people who had some contact with Wesolowski before her death) was called to testify, and in his testimony stated that he did not know Wesolowski well and did not remember what he had said to police in his 1999 interview. The 2001 proceedings ended without any charges.

¶ 7.  Little progress was made in the investigation until 2006, when a new DNA analysis technique detected male DNA mixed with Wesolowski's DNA in the blood swabs from her hands. In 2006, investigators, looking for a match, took DNA samples from dozens of males who had been identified during the investigation,

including Libecki. Analysis determined that Libecki's DNA was present in the blood samples taken from Wesolowski's hands.

¶ 8.　Before calling Libecki in for interrogation, officers tracked down and purchased the 1993 Ford Explorer that Libecki had owned at the time of the murder. They searched the vehicle and conducted tests for physical evidence but found no blood evidence in it at that time. They determined that the Explorer's wheelbase measurement matched the measurement of accelerating tire tracks left at the scene. The investigation also established that bloody boot prints at the scene were from "Texas Steer" brand boots and that Libecki had bought that brand of boots to wear to work in 1999.

¶ 9.　With the DNA, wheelbase, and boot print evidence in hand, investigators asked Libecki to come in to the Germantown police department, which Libecki did on December 7, 2006. Libecki gave officers essentially the same story as in his initial interview, claiming no knowledge of Wesolowski or her killing. The officers then disclosed the new evidence, i.e., the boot prints and tire tracks, and Libecki's DNA on Wesolowski's hands. When Libecki declined to voluntarily provide his fingerprints, investigators read him his *Miranda*[2] rights and executed a search warrant they had obtained in advance, authorizing them to take fingerprints, DNA, and hair samples. Unbeknownst to Libecki, other officers executed a search warrant on his home. Libecki was not arrested, but pursuant to an agreement his lawyer reached with police, he spent that night at the jail.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

¶ 10. The next day, December 8, 2006, with his attorney present, after being granted immunity from the use of his testimony and evidence derived from it, Libecki gave a new story about the events on May 27, 1999. For the first time, Libecki admitted being present at the scene of Wesolowski's murder. He testified that Wesolowski was killed by a coworker, Tommy Thompson, who had sat in the backseat of Libecki's Ford Explorer to sell him cocaine after work. Libecki claimed that while he was using some of the cocaine, Wesolowski unexpectedly entered the Explorer and sat beside Thompson in the backseat. He stated that Thompson and Wesolowski remained in the back seat while he did cocaine in the front seat. At some point, according to Libecki, he felt a bump on the back of his seat, and when he opened the driver's-side back door to ask Thompson and Wesolowski to leave, he saw that Wesolowski had been stabbed. Libecki testified that he dragged Wesolowski's body to the side of the road and then sped off in the Explorer.

¶ 11. At the time of Libecki's testimony in 2006, the man he identified as the murderer, Thompson, was already dead, having died from a drug overdose in 2003. Significantly, during his 2006 John Doe testimony, Libecki specifically talked about how there was blood in the backseat of his automobile, which would go to show that the murder occurred there.

¶ 12. Libecki was not arrested in 2006 but was interviewed again by police in January 2007. He reiterated the story he gave when he testified at the John Doe hearing, that Wesolowski was stabbed by Thompson in the backseat of his Explorer. When police responded that they had found no blood evidence in the backseat, Libecki protested that they should look again because Wesolowski's blood had to have soaked into the seat.

517

Libecki made similar statements during his testimony at another John Doe hearing held in 2008.

¶ 13.   In July 2009, investigators finally removed the cover from the Explorer's backseat and found evidence of Wesolowski's blood soaked into the cushion beneath. Shortly thereafter, in August 2009, Libecki was charged with first-degree intentional homicide as a party to the crime.

¶ 14.   Libecki's trial took place in November 2010. The prosecution was based in large part on physical evidence linking Libecki to the scene, including the blood evidence from the Explorer's backseat. Libecki testified in his own defense, telling his version of events, in which he was present as a witness, but not a participant, when Thompson stabbed Wesolowski in the Explorer's backseat and was standing over her body with a knife at the side of the road when Libecki sped away in the Explorer.

¶ 15.   Just before closing arguments, the prosecution sought to amend the information to remove the "party to a crime" element and instead limit the charge against Libecki to first-degree intentional homicide. After conferring with Libecki's counsel and Libecki himself to confirm they did not object, the court allowed this late amendment. The jury found Libecki guilty of murdering Wesolowski, and he was sentenced to life in prison with no possibility of parole.

¶ 16.   In postconviction motions, Libecki argued that his right against compelled self-incrimination had been violated by admission of the blood evidence from the Explorer's backseat and that he received ineffective assistance of counsel because his trial lawyer did not object to that evidence or to the amendment of the information to eliminate the "party to a crime" element. The circuit court denied these motions, ruling that the

objection to the blood evidence was forfeited when not made below and that Libecki could not establish ineffective assistance of counsel as to that decision or the decision to agree to the amendment of the information. Libecki now appeals.

*Discussion*

¶ 17.   Libecki first argues that admission of the blood evidence from the Explorer violated his Fifth Amendment privilege against self-incrimination, because, in his view, a defendant's waiver of the right to exclude immunized testimony and evidence derived from such testimony must be made in a personal colloquy with the defendant on the record.

¶ 18.   Libecki does not cite, and we have not found, any authority holding that the right to exclude immunized testimony or evidence derived from that testimony falls within that narrow class of rights that only the defendant, personally, may waive. *See State v. Smith*, 2012 WI 91, ¶¶ 53–54, 342 Wis. 2d 710, 817 N.W.2d 410 (discussing, generally, that the defendant's waiver of certain rights must be made in person and on the record), *cert. denied*, 133 S.Ct. 635 (2012); *see also State v. Brimer*, 2010 WI App 57, ¶ 5, 324 Wis. 2d 408, 781 N.W.2d 726 (applying ineffective assistance of counsel standard to issue of failure to object to admission of compelled testimony). While a personal colloquy must be made if the defense announces that the defendant will not take the stand in his or her own defense, *State v. Weed*, 2003 WI 85, ¶ 40, 263 Wis. 2d 434, 666 N.W.2d 485, no such personal colloquy is mandated when a defendant wants to take the stand, *State v. Denson*,

2011 WI 70, ¶ 63, 335 Wis. 2d 681, 799 N.W.2d 831. The decision to allow the use of compelled testimony is the same thing as a decision to take the stand because, after all, it is the defendant's testimony. So, requiring a personal colloquy before a defendant decides to waive immunity would make little sense under these precedents. A grant of use and derivative use immunity is designed to provide protection "coextensive" with the privilege against self-incrimination, not broader protection. *See State v. Spaeth*, 2012 WI 95, ¶ 36, 343 Wis. 2d 220, 819 N.W.2d 769 (discussing *Kastigar v. United States*, 406 U.S. 441 (1972)).

¶ 19.   Therefore, failing to conduct a personal colloquy concerning Libecki's desire to waive his immunity with respect to the blood evidence was not, in itself, an error. We pause here to say that such a colloquy would generally be a good practice *if* the circuit court has been alerted to the fact that the defendant was given use immunity and one party or another wants to use the testimony anyway. If the parties let the court know beforehand, the court can inquire to make sure that there is no confusion by the defendant concerning waiver, if in fact the defendant wants to waive immunity. It can also hear whether the evidence comes from a source that is independent of the testimony provided as a result of use immunity. But, in this case, it is apparent that the circuit court was not aware that Libecki had been given use immunity at a prior John Doe proceeding, nor that both parties desired to make use of evidence arising after immunity was given, until trial was well underway and the blood evidence had already come in.

¶ 20.   While we reject Libecki's assertion that a waiver of use immunity must be taken in a personal colloquy, at the same time we equally reject the State's

assertion that this issue can be resolved by a simple application of the contemporaneous objection rule. A defendant who has a preexisting immunity agreement with the State should be able to rely upon that bargain with the State without having to object should the State intend to violate its promise. Like a defendant who has raised a motion that has been granted, a defendant who secured immunity against the use of certain testimony "generally preserves the right to appeal on the issue raised by the motion without also objecting at trial." *See State v. Bergeron*, 162 Wis. 2d 521, 528, 470 N.W.2d 322 (Ct. App. 1991). Simply put, the State is prohibited from trying to use that evidence to make its case, absent an independent source or a waiver. As an officer of the court, the prosecutor should be up front with both the defendant and the court. So, rather than a simple issue of whether there was a personal colloquy or whether there was a contemporaneous objection, the issue presented is whether, under the totality of the circumstances, Libecki's waiver of his immunity with respect to the blood evidence in the Explorer was knowing, intelligent, and voluntary. *See Denson*, 335 Wis. 2d 681, ¶ 70.

■■

¶ 21. Our review of the record shows that Libecki's waiver of his immunity with respect to the blood evidence in the backseat of his car was knowing, intelligent, and voluntary. As the circuit court observed,

> [I]t was the strategic decision by [trial counsel] and Mr. Libecki starting with Mr. Libecki's post-immunity testimony in December 8, 2006, to make [the story about Thompson killing Wesolowski in the backseat of Libecki's car] their defense, and that is why [trial counsel] agreed to have the Germantown police department additionally question Mr. Libecki about that situation . . . .

This is why, throughout the case, Libecki wanted the jury to know that it was he who induced the police to discover that blood evidence in the car. Of particular relevance here, while the State wanted to use the evidence of blood having been found in the backseat of the car, the State did not want the jury to know that it was Libecki who cajoled the detectives to search for that evidence. Therefore, it was the State that objected when, during cross-examination of one of the detectives on the case, Libecki's trial counsel began to question the detective about the January 2007 interview during which Libecki told him to check the seat of the vehicle for blood. Again, it was the State that objected when Libecki began testifying to the fact that he assertively told investigators that they should check the backseat of his vehicle for the victim's blood. The court ruled in favor of the defense and permitted Libecki to testify about that postimmunity interview.

¶ 22. In short, it is obvious that both the State and the defense viewed Libecki's act of leading investigators to the blood evidence in his vehicle as exculpatory, not damaging, when viewed in context with the rest of the evidence. It was Libecki's view, both before and during trial, that this blood evidence and the way it was discovered would help him, not hurt him. He wanted this evidence before the jury. It supported his story.

¶ 23. This impression, that the decision to waive immunity with respect to the evidence of the blood in the Explorer was a strategic one agreed to by Libecki, is confirmed by the testimony of Libecki's trial counsel at the *Machner*[3] hearing that he and Libecki discussed this exact strategy, and that Libecki agreed with it, well

---

[3] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (1979).

before trial. In the words of Libecki's trial counsel, "we believed that that blood evidence, especially how it came to the authorities, was exculpatory on his behalf as opposed to inculpatory, so to speak." While it is true that Libecki claimed at the *Machner* hearing that his understanding was that prosecutors "already had my vehicle before [the immunized testimony] and [could] use it" at trial, the circuit court discounted that recollection, deeming it self-interested, and emphasizing that trial counsel had "no such recollection and, rather, [recalled that the defense lawyers and Libecki] had long-standing discussions about whether Mr. Libecki should testify in light of the physical evidence that they had in front of them."

¶ 24.   We likewise reject Libecki's alternative argument that the advice to waive immunity with respect to the blood evidence constituted ineffective assistance of counsel. In considering whether a defendant received effective assistance of counsel, we examine whether the defense lawyer's performance was "deficient" and whether any such deficiency prejudiced the defense. *State v. Allen*, 2004 WI 106, ¶ 26, 274 Wis. 2d 568, 682 N.W.2d 433. We must uphold a circuit court's determinations of historical fact—e.g., the credibility of trial counsel's testimony about strategy decisions—unless they are clearly erroneous. *See State v. Thiel*, 2003 WI 111, ¶¶ 23–24, 264 Wis. 2d 571, 665 N.W.2d 305.

■■

¶ 25.   Libecki cannot show deficient performance with respect to his trial counsel's decision to waive objection to the blood evidence from the Explorer. That strategy was sound because, as we have already commented, the location of the blood in the Explorer and the manner by which the evidence was finally found, tended to support Libecki's story of what happened, a

story that provided an alternative explanation for the otherwise damning physical evidence. The circuit court explained this strategy well:

> What does that [story] do as an affirmative defense? It explains away all that circumstantial evidence. It explains away the DNA on her hands. It explains away the boot prints in the blood. It explains away his tire marks. It explains away why these two people who work together happen to be so close to their place of employment at the time of the murder.

A valid strategy is not "deficient performance" just because it fails. *See State v. Elm,* 201 Wis. 2d 452, 464–65, 549 N.W.2d 471 (Ct. App. 1996). In the face of the overwhelming physical evidence placing Libecki at the scene of Wesolowski's murder, Libecki's defense had good reason to pursue a path that could give the jury an alternative explanation for Libecki's DNA on Wesolowski's hands, his boot prints in Wesolowski's blood, and his tire tracks speeding away from the murder scene.

█

¶ 26. Our conclusion is the same with respect to Libecki's next argument, that his trial counsel's failure to object to the amendment of the information constituted ineffective assistance. Amending the information to drop the "party to a crime" portion of the charge, as the circuit court noted, "fit nicely in with Mr. Libecki's defense that he was an innocent bystander . . . . [B]y eliminating party to a crime, the State had to prove that Mr. Libecki did it," himself. In short, the amendment meant that the jury had to squarely face the question of whether Libecki, himself, did the crime, or whether he was simply present at the scene. Thus, this "all or nothing" amendment benefited Libecki, not the other

way around. Libecki's attempt to argue that the amendment somehow eliminated his "bystander" defense has no merit and we reject it.

¶ 27.   Finally, we reject Libecki's argument that he is entitled to a new trial "in the interests of justice" because "the real issue and controversy was not fully and fairly tried." Libecki simply strings together all his prior arguments and argues that their cumulative effect should convince us that a new trial is warranted. But he lost on those issues. So the interests of justice argument is a nonstarter.

*By the Court.*—Judgment and order affirmed.