COURT OF APPEALS
DECISION
DATED AND FILED

September 19, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP525-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF308

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

WILLIAM J. KNAPP,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Columbia County: TODD J. HEPLER, Judge. *Affirmed*.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

Before Kloppenburg, P.J., Blanchard, and Nashold, JJ.

¶1   PER CURIAM. William Knapp appeals a judgment of conviction and an order denying his postconviction motion for a new trial based on a claim of

ineffective assistance of trial counsel. Knapp was convicted of two counts of first-degree sexual assault of a child under the age of 13 for the sexual assault of A.B., and one count of sexual assault of a child under the age of 16 for the sexual assault of C.D.[1] On appeal, Knapp challenges his conviction as to the two counts for the sexual assault of A.B. Knapp argues that his trial counsel was ineffective because counsel failed to object at trial to testimony from a police detective as to what A.B. told the detective during interviews. He argues that the detective's testimony was inadmissible hearsay and that it provided details not testified to by A.B. and bolstered A.B.'s testimony. We conclude that not objecting to the detective's testimony was consistent with counsel's trial strategy, that this strategy was objectively reasonable, and that Knapp therefore fails to show that counsel's performance was deficient under the constitutional standard. Accordingly, we affirm.

## BACKGROUND

¶2      Knapp was charged with two counts of first-degree sexual assault of a child under the age of 13 for the sexual assault of A.B., and one count of sexual assault of a child under the age of 16 for the sexual assault of C.D. Relevant here, the complaint alleges that Knapp touched A.B.'s breasts on two different occasions. The following facts are derived from the three-day trial.

---

[1] To protect the victims' identities, we refer to them using the letters "A.B." and "C.D.," which are not the victims' initials. *See* WIS. STAT. RULES 809.19(1)(g) and 809.86 (2021-22). For the same reason, we later refer to a third victim as "E.F."

All references to the Wisconsin Statutes are to the 2021-22 version.

¶3 Knapp was engaged to A.B.'s aunt, who was a close friend of C.D.'s family, and A.B. and C.D. were friends. A.B. and C.D. and their families used to go camping in the summer with a group of people that included Knapp.

¶4 Approximately one year before the State filed the complaint in this action, Knapp pled guilty to and was convicted of the repeated sexual assault of E.F. Knapp was engaged to E.F.'s mother (A.B.'s aunt), and E.F. and her family were among the group, including A.B., C.D., and Knapp, that camped together. E.F. and A.B. are cousins, and E.F. was close friends with both A.B. and C.D.

¶5 The following facts, also derived from the trial, relate specifically to the two counts against Knapp for the sexual assault of A.B. A.B. testified that when she was 11 and 12 years old, Knapp, who was in his 40s, sent her Snapchat messages calling her "beautiful, pretty, and hot."[2] A.B. also testified that Knapp sent her, via Snapchat, photos of him without his shirt on, photos of him in front of a mirror wearing only a towel, and photos of him pulling down his waistband to show his tan line.

¶6 A.B. testified that while camping, Knapp touched her breasts on two different occasions, once in an "add-a-room"[3] connected to a camper, and once when A.B. was fishing from a pier at the campground. A.B. also testified that on

---

[2] A.B. testified that Snapchat is an application for smart phones through which users can share text messages and photos with other users, and that those messages and photos disappear unless the receiver replays them or takes screenshots of them.

[3] A.B. testified that "[a]n add-a-room is usually an extra room connected to a camper for sometimes sleeping space. It looks like a shed. And we used it -- there was futons in there, and we would meet there in the morning for morning coffee."

other occasions, Knapp touched her thigh and slowly moved his hand up her leg, attempted to kiss her, and touched her buttocks.

¶7 Cheryl Patty, a detective with the Dane County Sheriff's Department, also testified at trial. Patty testified that she interviewed A.B. on three different occasions. Relevant here, Patty testified to certain details that A.B. told her during the last two interviews, details that A.B. testified at trial she did not remember:

- Although A.B. testified that she did not remember when Knapp engaged in the conduct at issue, other than it happened during the summer, Patty testified that A.B. told her when each of Knapp's assaults and other conduct described above occurred, and that they occurred in specific months during the summer of 2016, when A.B. was 11 years old.

- Although A.B. testified that she did not recall how many times Knapp touched her buttocks or where those incidents took place, Patty testified that A.B. told her that Knapp touched her buttocks on two different occasions. Patty also testified to details about the two occasions, including that A.B. said that Knapp touched A.B.'s buttocks the first time while A.B. was walking around the campground after dark, and that Knapp touched A.B.'s buttocks the second time while A.B. was swimming in the lake and playing on a water trampoline.

- Although A.B. testified that she could not remember whether Knapp touched her breasts over or under her bra on either of the two occasions, Patty testified that A.B. told her that the first time Knapp touched A.B.'s breasts he did so under her bra, and that the second time he did so over her bra.

¶8      Patty's testimony also revealed inconsistencies between A.B.'s interview statements and A.B.'s trial testimony that the jury would not otherwise have been aware of.  For example, A.B. testified at trial that in the add-a-room and on the pier Knapp touched only one of her breasts on each occasion.  In contrast, Patty testified that A.B. told her that Knapp touched both of A.B.'s breasts on the first occasion in the add-a-room and further that Patty "believe[d]" that A.B. told her that Knapp touched both of A.B.'s breasts while A.B. and Knapp were on the pier.  Additionally, although A.B. testified that, when Knapp touched her breast on the pier, he was standing next to her, Patty testified that A.B. told her during the interviews that Knapp pressed up against A.B. from behind and that A.B. "could feel [Knapp's] penis pushed up against her butt."

¶9      Knapp testified on his own behalf.  He admitted that he sent A.B. Snapchat messages telling A.B. that she was beautiful, hot, and sexy, but he denied ever attempting to kiss A.B. or ever touching A.B.'s thigh, breasts, or buttocks.

¶10     The jury found Knapp guilty on all three counts and a judgment of conviction and sentence were subsequently entered.

¶11     Knapp moved for postconviction relief, arguing that he is entitled to a new trial because Patty's testimony regarding A.B.'s interview statements was inadmissible hearsay and trial counsel's failure to object to Patty's testimony on that basis constituted ineffective assistance of counsel.  The circuit court denied Knapp's motion after a **Machner** hearing at which trial counsel testified.  *See* **State v. Machner**, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).  The court determined that counsel's failure to object did not constitute ineffective assistance of counsel because Patty's testimony was admissible under hearsay exceptions.

5

The court further determined that, even if Patty's testimony was not admissible, not objecting to it was consistent with counsel's trial strategy, which was to undermine A.B.'s and C.D.'s credibility by pointing out inconsistencies and suggesting that A.B. and C.D. had embellished their accounts of the relevant events over time.

¶12　Knapp appeals.

## DISCUSSION

¶13　Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact. "The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo." *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93.

¶14　"A claim of ineffective assistance of counsel has two prongs: deficient performance and prejudice." *State v. Jackson*, 2023 WI 3, ¶10, 405 Wis. 2d 458, 983 N.W.2d 608. The burden is on the defendant to prove both prongs. *State v. Moats*, 156 Wis. 2d 74, 100, 457 N.W.2d 299 (1990). Because, as we explain below, we conclude that Knapp fails to show that counsel's performance was deficient under the relevant standard, we need not address whether Knapp shows that he was prejudiced. *See State v. Bucki*, 2020 WI App 43, ¶81, 393 Wis. 2d 434, 947 N.W.2d 152 ("If the defendant fails to make a sufficient showing on one prong, it is unnecessary to address the other.").

¶15　"To demonstrate deficient performance, the defendant must show that his counsel's representation 'fell below an objective standard of

reasonableness' considering all the circumstances." *State v. Carter*, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695 (quoting *Strickland v. Washington*, 466 U.S. 668, 688). Counsel's performance is not deficient if it falls within the "'wide range of professionally competent assistance.'" *State v. Pico*, 2018 WI 66, ¶19, 382 Wis. 2d 273, 914 N.W.2d 95 (quoting *Strickland*, 466 U.S. at 690). "We presume that counsel's assistance fell within that range," *id.*, and our "review of counsel's performance is highly deferential and reviewed from counsel's perspective at the time of trial, not based on hindsight," *State v. Robinson*, 177 Wis. 2d 46, 55-56, 501 N.W.2d 831 (Ct. App. 1993); *see also Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). We "'will not second-guess a reasonable trial strategy, [unless] it was based on an irrational trial tactic or based upon caprice rather than upon judgment.'" *Breitzman*, 378 Wis. 2d 431, ¶65 (alteration in original) (quoting *State v. Domke*, 2011 WI 95, ¶49, 337 Wis. 2d 268, 805 N.W.2d 364). "A valid strategy is not 'deficient performance' just because it fails." *State v. Libecki*, 2013 WI App 49, ¶25, 347 Wis. 2d 511, 830 N.W.2d 271.

¶16 On appeal, Knapp renews his argument that counsel was constitutionally ineffective by failing to object to Patty's testimony regarding A.B.'s interview statements. Specifically, Knapp argues that Patty's testimony was inadmissible hearsay and that counsel did not have a strategic reason for not objecting to Patty's testimony as hearsay. As we explain, Knapp fails to show that trial counsel's failure to object was deficient because, even if we assume that Patty's testimony was inadmissible hearsay, not objecting to it was consistent with counsel's trial strategy, which we conclude was objectively reasonable.

¶17    In arguing that counsel's performance was deficient because counsel did not have a strategic reason for not objecting to Patty's testimony about A.B.'s interview statements, Knapp relies on counsel's failure, at the *Machner* hearing, to provide a strategic reason for failing to object. Specifically, at the hearing, counsel testified that he thought he objected to Patty's testimony regarding A.B.'s interview statements, but that the circuit court ruled that A.B. was unavailable. However, the trial transcript does not show that counsel made, or that the court ruled on, an objection regarding what Patty would testify that A.B. told her.[4] When the absence of such an objection was pointed out to counsel and counsel was asked if he had "a strategic reason specifically for not objecting," other than believing that "there was a ruling," counsel responded, "No."

¶18    However, counsel also agreed at the *Machner* hearing that his strategy "involved … poking at the veracity of the [victims'] stories"; that in his opening argument, counsel had invoked a "theme of embellishment"; that "hav[ing] inconsistent testimony … fit with the theme that the [victims] embellished details over[ ]time"; and that in closing, counsel "hammer[ed] on" the theme of "[a]dded details over time by the [victims]."

¶19    "[T]rial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous." *Breitzman*, 378 Wis. 2d 431, ¶37. In ruling on Knapp's postconviction motion, the circuit court found that counsel's trial strategy was to use Patty's testimony "to argue that the witnesses

---

[4] Patty testified as to what C.D. told Patty during interviews before Patty testified as to what A.B. told Patty during interviews. At the beginning of Patty's testimony regarding C.D.'s interview statements, counsel raised a hearsay objection that was overruled. However, counsel did not subsequently raise a hearsay objection regarding Patty's testimony about A.B.'s interview statements.

were not credible because of the purported inconsistencies and embellishments in their testimony." The court further found that in Knapp's opening statement and closing argument, counsel "suggested that the victims and witnesses were not telling the whole truth and [that they] embellished or added facts to the events." Knapp does not argue that these findings are clearly erroneous.

¶20     Consistent with the circuit court's findings, during Knapp's opening statement, counsel told the jury:

> And you'll hear probably testimony about these incidents but it's the circumstances with which they are alleged to have happened that become troublesome. It's the way they unfold and how there are multiple versions of different incidents and added facts and added elements and they get bigger and bigger and bigger.
>
> So when you're listening to this and thinking about all the times that this witness has told the story, I also want you to think about how that story came out and say … that it's usual for these things to come out in these ways.
>
> But I would submit to you that it's not necessary and that certainly there are circumstances where a person can just tell the entire story and tell it once … and get it out there and then it builds or details are added after the fact. But you have significant moments where it wraps it up over the course of time and over the course of a number of interviews.

¶21     Consistent with this theme, during trial, counsel also: cross-examined E.F. about her close relationship with A.B. and C.D.; cross-examined A.B. about whether and when A.B. spoke with E.F. about Knapp's repeated sexual assaults of E.F.; and cross-examined Patty about the use of leading questions and successive interviews during child sexual assault investigations. Additionally, in closing argument, counsel told the jury to "remember what's happened here and what's uncon[tro]verted, that … Knapp was in [the victims' lives] and violated

their good friend criminally. And so he's become the bad guy and that the natural inclination is to get the bad guy." Counsel further argued:

> Is it inconceivable that … even if you don't find that [the victims] specifically lied about things, that they embellish[ed] things, that they told them some things, that they built these stories, and over the course of these interviews and this confirmation and this encouragement that extra facts came out and more facts came out and more parts to this story that weren't actually true but [that] they told themselves …. [T]hey've been encouraged so often that they told them and it seemed true to them and seemed like the right thing to do, even if they didn't remember it exactly.

¶22 These aspects of the record strongly support the circuit court's finding that counsel's strategy was to undermine A.B.'s credibility by calling attention to inconsistent statements and by highlighting how A.B.'s descriptions of events had changed over time. Accordingly, we accept the court's finding, which is not challenged by Knapp. *See id.* Not objecting to Detective Patty's testimony regarding A.B.'s interview statements was consistent with counsel's strategy, and, as we now explain, Knapp has not shown that counsel's strategy was objectively unreasonable.

¶23 Knapp relies heavily on counsel's subjective statement that he did not have a specific strategic reason for not objecting to Patty's testimony. However, Knapp does not argue that not objecting was *objectively* unreasonable. This is significant because, as our supreme court observed in *Jackson*: "Deficient performance is judged by an objective test, not a subjective one. So, regardless of defense counsel's thought process, if counsel's conduct falls within what a reasonably competent defense attorney could have done, then it was not deficient performance." *Jackson*, 333 Wis. 2d 665, ¶9 (citation omitted); *see also State v. Honig*, 2016 WI App 10, ¶24, 366 Wis. 2d 681, 874 N.W.2d 589 ("A reviewing

court can determine that defense counsel's performance was objectively reasonable, even if trial counsel offers no sound strategic reasons for decisions made."). As we now explain, we conclude that counsel's trial strategy was objectively reasonable.

¶24 The prosecution's case regarding the two counts of sexual assault against A.B. rested on crediting A.B.'s version of events and discrediting Knapp's. The prosecution told the jury that the case was a "credibility contest," and Knapp's counsel similarly told the jury that "it's always been about credibility." Patty testified that she had interviewed A.B. on three different occasions—in January, February, and August 2018—and that A.B. did not disclose that Knapp had touched her breasts or buttocks until the third interview. Patty's testimony thus showed that what A.B. reported to Patty changed during the course of the three different interviews. Further, the jury learned that A.B., at trial, did not relate much of what Patty testified that A.B. told her during the interviews. Moreover, some of what Patty testified that A.B. told her during the interviews was inconsistent with A.B.'s trial testimony.[5] All of this supported the defense trial strategy of showing that the victims—allegedly motivated by a desire to see Knapp punished further for his sexual assault of E.F., and allegedly encouraged by the manner in which the case was investigated—embellished, over time, their accounts of what happened, which resulted in inconsistencies across the successive interviews and between their interview statements and their trial

---

[5] We observe that the inconsistencies between A.B.'s testimony and Patty's testimony concerned the jury, as reflected in the following question that the jury posed to the court during the course of deliberations: "We are concerned with the divergence of the testimony of [A.B.] and Det[ective] Patty on the breast touching at the [pier]. May we hear the recording, or see the transcript or the minutes if they would be helpful to help us reconcile?"

11

testimony. Given these circumstances, it was objectively reasonable for counsel to fail to object to Patty's testimony in an attempt to undermine A.B.'s credibility. We are satisfied that counsel's representation was well within the "'wide range of professionally competent assistance.'" *Pico*, 382 Wis. 2d 273, ¶19 (quoting *Strickland*, 466 U.S. at 690).[6]

¶25 Accordingly, for the reasons explained above, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[6] Knapp appears to argue that, as a rule, not objecting to inadmissible hearsay is constitutionally deficient performance, and as support he cites *State v. Domke*, 2011 WI 95, 337 Wis. 2d 268, 805 N.W.2d 364, and *State v. Jimmie R.R.*, 2004 WI App 168, 276 Wis. 2d 447, 688 N.W.2d 1. However, in the cases that Knapp cites, there was no objectively reasonable basis for counsel's failure to object to the inadmissible hearsay. *Domke*, 337 Wis. 2d 268, ¶¶41, 46; *Jimmie R.R.*, 276 Wis. 2d 447, ¶23. And as we have noted, counsel's conduct does not constitute deficient performance when it is consistent with a reasonable trial strategy. *See, e.g.*, *State v. Breitzman*, 2017 WI 100, ¶74, 378 Wis. 2d 431, 904 N.W.2d 93 ("We conclude that trial counsel's failure to object … was not deficient performance, and thus not ineffective assistance of counsel, because declining to object was part of a reasonable trial strategy.").